NO. 07-03-0530-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

OCTOBER 19, 2004

_____

IN THE INTEREST OF K.N.L., J.H., C.J.L., S.F.L., AND I.J.L., CHILDREN

_____

FROM THE 242ND DISTRICT COURT OF HALE COUNTY;

NO. B29927-9809; HONORABLE ED SELF, JUDGE

_____

Before JOHNSON, C.J., and REAVIS and CAMPBELL, JJ.

**MEMORANDUM OPINION**

Following a bench trial on Elizabeth Hernandez's petition to terminate the parental rights of her ex-husband Chris Lopez in their five children, the trial court granted the petition and appointed Elizabeth managing conservator of the children.[1]  With one issue,

_____

[1]At the same time, the court terminated the possessory conservatorship rights of Chris's mother.  The propriety of that determination is not before us; therefore, we limit our analysis to those facts pertaining to the termination of Chris's rights.

Chris contends the evidence is legally and factually insufficient to support the termination order. We affirm.

In February of 2003, Elizabeth filed the petition alleging as grounds for the termination that Chris: (1) knowingly placed or allowed the children to remain in conditions or surroundings which endangered their physical or emotional well-being; (2) engaged in conduct or knowingly placed the children with persons who engaged in conduct which endangered their physical or emotional well-being; (3) failed to support the children in accordance with his ability for one year ending within six months of the date of the filing of the petition; and (4) knowingly engaged in criminal conduct that resulted in his conviction of an offense and confinement and inability to care for the children for not less than two years from the date of the filing of the petition. Tex. Fam. Code Ann. § 161.001(1)(D), (E), (F), and (Q) (Vernon 2002).[2] When the court conducted a hearing on the petition in October of 2003, the children ranged in age from six to 14.

With his sole issue, Chris queries "[w]hether the evidence received by the court discharged [Elizabeth's] burden to provide the court with evidence that was of such character that the court could find that it unquestionably satisfied the legal requirement that the evidence be clear and convincing." We perceive Chris's contention as a challenge to the legal and factual sufficiency of the evidence to support the court's termination order.

---

[2]All references to sections are to the Texas Family Code unless otherwise designated.

Specifically, Chris seems to challenge only the grounds upon which the trial court relied in reaching its decision to terminate his parental rights. Because the trial court did not specify those grounds, and since Chris neglected to obtain findings of fact and conclusions of law detailing them, we will affirm the decision if the evidence supports the existence of even one ground. *See* In re S.F., 32 S.W.3d 318, 320 (Tex.App.--San Antonio 2000, no pet.).

A parent-child relationship may be terminated if the court finds by clear and convincing evidence that: (1) the parent has engaged in any of the specific conduct enumerated in the Family Code as grounds for termination; and (2) termination is in the best interest of the child. *See* § 161.001(1) & (2); Tex. Dept. of Human Services. v. Boyd, 727 S.W.2d 531, 533 (Tex. 1987). In a legal sufficiency review of the evidence to support an order terminating parental rights, we look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true. In re J.F.C., 96 S.W.3d 256, 266 (Tex. 2002). To give appropriate deference to the factfinder's conclusions and the role of a court conducting a legal sufficiency review, looking at the evidence in the light most favorable to the judgment means that a reviewing court must assume the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so. *Id*. Thus, we disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible. *Id*.

The standard for reviewing the factual sufficiency of termination findings is whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the petitioner's allegations. *See* In re C.H., 89 S.W.3d 17, 25 (Tex 2002). Under that standard, we consider whether the disputed evidence is such that a reasonable factfinder could not have resolved the disputed evidence in favor of its finding. *In re J.F.C.*, 96 S.W.3d at 266. If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient. *Id*.

Concluding the evidence establishes that Chris engaged in conduct that endangered his children's physical or emotional well-being, we confine our analysis to the law and facts demonstrating that ground. First, endangerment means to expose to loss or injury, to jeopardize. In re J.T.G., 121 S.W.3d 117, 125 (Tex.App.–Fort Worth 2003, no pet.). It is not necessary that the parent's conduct be directed at the child or that the child actually suffer injury. *Boyd*, 727 S.W.2d at 533. Next, we acknowledge that section 161.001(1)(E) requires us to look at the parent's conduct alone, including acts or omissions or failures to act. In re J.B.W., 99 S.W.3d 218, 226 (Tex.App.–Fort Worth 2003, pet. denied). To determine whether termination is appropriate courts look to parental conduct both before and after the child's birth. In re D.M., 58 S.W.3d 801, 812 (Tex.App.–Fort Worth 2001, no pet.). Additionally, termination under section 161.001(1)(E) must be based on more than a single act or omission; a voluntary, deliberate, and conscious course of conduct by the

4

parent is required. *In re J.B.W.*, 99 S.W.3d at 226. For example, imprisonment, standing alone, does not constitute "engaging in conduct which endangers the emotional or physical well-being of the child." § 161.001(1)(E); *Boyd*, 727 S.W.3d at 533. However, it is a fact properly considered on the issue of endangerment. *Id*. at 534. If the imprisonment of the parent displays a voluntary, deliberate, and conscious course of conduct, it qualifies as conduct that endangers the emotional well-being of the child. *See* In re J.N.R., 982 S.W.2d 137, 142 (Tex.App.–Houston [1st Dist.] 1998, no pet.), *disapproved on other grounds*, In re C.H., 89 S.W.3d 17 (Tex. 2002). That is to say, if the evidence, including imprisonment, proves a course of conduct that has the effect of endangering the child, the requirement of section 161.001(1)(E) is met. *Boyd*, 727 S.W.2d at 534. Likewise, drug addiction and its effect on a parent's life and ability to parent may establish an endangering course of conduct. *In re J.T.G.*, 121 S.W.3d at 125-26.

Chris acknowledges that he "has engaged in questionable conduct in two respects consisting of: 1. his past drug use; and 2. his somewhat lengthy record of involvement with the law." We conclude the record demonstrates, however, that Chris indulged in more than just a passing fancy with illicit drug use and illegal behavior. Indeed, the evidence adduced at trial reveals the following: (1) Chris's children were born in 1989, 1990, 1993, 1996, and 1997; (2) beginning in 1989, Chris amassed 15 convictions for misdemeanor offenses ranging from possession of marijuana and driving while license suspended to evading arrest and failure to identify; (3) he received felony convictions for "theft and delivery of methamphetamines"; (4) in 1993 he received a felony conviction for possession of

5

marijuana; (5) in 1997, he was convicted in Lubbock County of felony possession of marijuana and sentenced to five years confinement; (6) he received two felony convictions in Hale County, one for possession of marijuana and the other for evading detention with a vehicle; (7) he was serving a two year sentence for his most recent conviction at the time of trial; (8) by his own admission, he has, essentially, been in prison "off and on" for most of his adult life; (9) though his criminal history suggests he has a problem with marijuana, at a minimum,[3] he sought no treatment for that addiction while he was on the "outside"; (10) he believes marijuana has "only been a problem because it's against the law"; (11) he has been under the influence of drugs around his children; (12) in May of 2002, while on parole, he tested positive for marijuana; (13) in June of 2002, he tested positive for cocaine and marijuana; and (14) according to his parole officer, he has a history of not complying with any type of supervision.

Chris claims that he no longer uses drugs and that "the record is unclear concerning the exact date" he stopped using drugs; therefore, the "drug issue" should not have been considered by the trial court in determining whether there were grounds to support termination of his parental rights. He further maintains that "his parole was never revoked and his testimony was corroborated by . . . his parole officer who stated that he was discharged while in custody on March 13, 2003." Assuming *arguendo* that such disputes

---

[3]Chris admitted injecting cocaine "off and on at times" during 1995 and 1996. He also tested positive for cocaine in June of 2002. His conviction for delivery of methamphetamine raises some concern about his dependency on that drug as well.

6

actually existed, we conclude they did not rise to the level that a reasonable factfinder could not have resolved them in favor of its ruling. *In re J.F.C.*, 96 S.W.3d at 266. The only evidence suggesting that Chris no longer abused drugs was his own self-serving testimony to that effect. In fact, Chris's parole officer averred that Chris tested positive for cocaine and marijuana as recently as June of 2002. The trial court was free to discredit Chris's explanation that "it was secondhand smoke" that contaminated his testing sample. *See id.* (emphasizing the deference given to the factfinder's conclusions). Moreover, while the parole board allowed Chris to "discharge" from his most recent parole, his supervising officer opined that it did so because he already was in custody for a new felony offense. And though Chris escaped having his most recent parole revoked, he violated the terms of every other parole on which he was placed resulting in their revocations. Apparently, the trial court, in assessing whether Chris engaged in conduct that endangered the physical or emotional well-being of his children, attributed little significance to Chris's relative success on his most recent period of supervision. This it was entitled to do.

Thus, having carefully reviewed the record, we conclude the evidence was sufficient to produce in the mind of the trial court, as factfinder, a firm belief or conviction that Chris engaged in a course of conduct that endangered his children's emotional or physical well-being. Furthermore, without looking at the evidence in a light most favorable to the verdict, we conclude that both the disputed and undisputed evidence favoring and disfavoring the trial court's ruling permit a reasonable factfinder to form a firm conviction and belief that Chris engaged in such conduct. Indeed, both before and after the births of each of his

7

children, Chris seemingly chose a life of crime and drug use over his responsibilities as a father. And, contrary to Chris's assertion, the absence of "psychological studies of the children or any tests . . . [demonstrating] that children [sic] had ever or were ever likely to suffer physical or emotional injury as a result of their relationship, however limited, with their father," gives us no cause for concern. Indeed, it did not take a child psychiatrist to illustrate for the trial court the detrimental effect Chris's lifestyle must have had upon his children's spirits. In short, the evidence being legally and factually sufficient to support the termination order, Chris's sole issue is overruled.

Accordingly, the judgment of the trial court is affirmed.


Per Curiam