99 S.W.3d 218 (2003)
In the Interest of J.B.W. and K.G., Children.
No. 2-01-340-CV.
Court of Appeals of Texas, Fort Worth.
January 9, 2003.
Rehearing Overruled March 13, 2003.
*220 Dean M. Swanda, Arlington, for appellant (Mother).
Stephanie K. Patten, Fort Worth, for appellant (Father).
Tim Curry, Crim. Dist. Atty., Charles M. Mallin, Asst. Crim. Dist. Atty., Chief of the Appellate Section, Michael R. Casillas, James Teel, Asst. Crim. Dist. Attys., Fort Worth, for appellee.
Before A: CAYCE, C.J.; DAY and GARDNER, JJ.

OPINION
JOHN CAYCE, Chief Justice.

Introduction
Frances W. appeals from the trial court's termination of her parental rights in her children, J.B.W. and K.G. David G. appeals from the trial court's termination of his parental rights in K.G. J.B.W.'s alleged biological father was a party below, but he does not appeal the trial court's termination order. We will affirm.

Background Facts and Procedural History
On March 6, 1999, David injured J.B.W. while Frances was at a Laundromat. When Frances returned from the Laundromat and discovered the injuries, she became hysterical. Frances and David argued until David left; then Frances went to the hospital with J.B.W. After J.B.W. was discharged from the hospital, Frances, J.B.W., and K.G. went to a women's shelter to stay. Texas Department of Protective and Regulatory Services (TDPRS) removed *221 the children from Frances on March 8, 1999, when TDPRS feared Frances was going to reunite herself and the children with David. David was arrested on June 28, 1999 and was, at the time of trial, serving a six-year sentence for injuring J.B.W.
TDPRS was appointed temporary managing conservator of the children on March 8, 1999. Also on March 8, 1999, TDPRS petitioned to terminate appellants' parental rights in K.G. On May 26, 1999, TDPRS petitioned to terminate Frances's parental rights in J.B.W. The cases were consolidated, and trial began on February 15, 2000. Trial was continued to March 29, 2000, but never resumed.
On December 11, 2000, while the children were still in TDPRS's custody, TDPRS filed another lawsuit seeking to terminate appellants' parental rights in J.B.W. and K.G. On May 18, 2001, the trial court dismissed TDPRS's 1999 lawsuit for want of prosecution. The December 2000 lawsuit was tried to the court in August 2001, and the trial court rendered judgment terminating appellants' parental rights in J.B.W. and K.G. on October 18, 2001.

Trial Court's Subject Matter Jurisdiction
In their third issue, appellants complain for the first time on appeal that the trial court had no subject matter jurisdiction to render the October 2001 termination decree. They contend that the trial court's jurisdiction expired sometime in September 2000 under former section 263.401 of the family code[1] and that all of the trial court's rulings made after that date are, therefore, null and void.
Before reaching the merits of this argument, we must first address the State's contention that appellants have waived their jurisdictional complaint because they did not raise it in their "statements of points," as required by section 263.405(b) of the family code.[2]
A complaint that the trial court lacked subject matter jurisdiction raises fundamental error and therefore may be made at any time on appeal.[3] Thus, the failure to include a subject matter jurisdiction complaint in the statements of points on appeal does not deprive us of our jurisdiction to review the merits of the complaint.[4] We, therefore, hold that appellants did not waive their right to complain about the trial court's lack of subject matter jurisdiction by failing to include the complaint in their statements of points on appeal.[5] We will now address the merits, if any, of appellants' jurisdictional complaint.
*222 Section 263.401 of the family code provides that, unless the trial court has rendered a final order on the first Monday after the first anniversary of the date the court appointed TDPRS as temporary managing conservator in a suit affecting the parent-child relationship, the court "shall dismiss" a suit filed by TDPRS that seeks the termination of the parent-child relationship.[6] The trial court may extend this deadline for up to 180 days if, by the Monday after the first anniversary date, the court finds that continuing TDPRS's conservatorship of the child is in the child's best interest and renders an order that complies with section 263.401(b).[7] If the trial court grants an extension, but does not render a final order within the 180-day period, it must dismiss the suit.[8]
A party may, however, waive the right to object to the trial court's failure to comply with these statutory deadlines. Under current section 263.402(b), a party "who fails to make a timely motion to dismiss the suit or to make a motion requesting the court to render a final order before the deadline for dismissal ... waives the right to object to the court's failure to dismiss the suit."[9] To be timely, a motion to dismiss must be made before TDPRS has introduced all of its evidence, other than rebuttal evidence, at the trial on the merits.[10] This provision became effective on September 1, 2001shortly after the August 2001 trial on termination ended in this case, but before the trial court rendered its termination decree in October 2001and expressly applies to all termination suits pending on that date "regardless of whether the suit was filed before, on, or after the effective date of this Act."[11]
Applying the current version of section 263.402(b) to this case, appellants were required to move to dismiss the suit before TDPRS introduced all of its evidence at the August 2001 trial on termination. Appellants made no such motion or similar objection in the trial court, however, and the case remained on the trial court's docket until it rendered the October 2001 decree of termination. Appellants have, therefore, waived their right to object to the trial court's failure to dismiss the suit because they did not raise the objection in the trial court.[12]
Notwithstanding the legislature's clear and unambiguous expression of intent that the September 1, 2001 amendments to section 263.402(b) apply to all termination suits pending on the effective date of the amended statute, appellants assert that the amended version of the statute should not apply to this case. Instead, they contend that this case should be controlled by the former statute, in which the deadlines for rendering or dismissing in a termination suit were jurisdictional and could not be waived. Additionally, appellants argue that applying the waiver provision to this case would lead to a prejudicial, absurd result in that it would require them to have made an objection to the trial court's failure to dismiss during trial that they were not statutorily required to make until *223 after the trial had ended. Appellants contend that this result would be contrary to the legislature's intent and impair their vested right to challenge the trial court's failure to dismiss for the first time on appeal, as they would have been permitted to do under the former statute. In the alternative, appellants contend that, if the trial court retained any jurisdiction over the case after September 2000, it was only for the limited purpose of rendering an order of dismissal.
Appellants' arguments are premised on the wording of former section 263.401(b), which read, in pertinent part:
On or before the time described by Subsection (a) for the dismissal of the suit, the court may extend the court's jurisdiction of the suit for a period ... not longer than 180 days....[13]
At least one court of appeals has interpreted the phrase "extend the court's jurisdiction" to mean that the trial court lost its jurisdiction over a termination suit under former section 263.401(b) if it failed to render a final order or grant a 180-day extension within a year of the date of the order placing the child in TDPRS's custody.[14] Thus, appellants contend that application of the former statute to this case would render the October 2001 termination decree void and allow them to challenge the trial court's failure to dismiss for the first time in this appeal.
It is well settled that "laws may not operate retroactively to deprive or impair vested substantive rights acquired under existing laws, or create new obligations, impose new duties, or adopt new disabilities in respect to transactions or considerations past."[15] On the other hand, no litigant has a vested right in a statute or rule that is remedial or procedural in nature and that affects no vested substantive right.[16] "Changes in such statutes or rules are considered remedial in nature and have been held not to violate the provisions of Article 1, sec. 16 of the Constitution."[17]
A statute conferring jurisdiction on a court in which litigation is pending is remedial and does not take away substantive rights because it speaks to the court's power to hear the case rather than to the parties' rights or obligations.[18] Moreover, a right cannot be considered a vested substantive right unless it is something more than a mere expectation based upon an anticipated continuance of the present general laws.[19] "[N]o one has a vested right in the continuance of present laws in relation *224 to a particular subject...."[20] If a statute is remedial or procedural, it controls all affected proceedings from the date it becomes law.[21]
It is clear that in amending section 263.401(b) the legislature intended to eliminate the limitations placed on the trial court's jurisdiction in the former statute. Prior to the 2001 amendments, a trial court lost jurisdiction over a termination suit if it failed to render a final order or order an extension of its jurisdiction within a year of the date of an order placing a child in TDPRS's custody.[22] The legislature subsequently amended section 263.402(b) to add the provision that a party waives the right to complain of the trial court's failure to dismiss the suit unless he moves the trial court to render a final order before the deadline for dismissal or makes a timely motion to dismiss the case. At the same time, the legislature amended section 263.401 to omit the language "extend the court's jurisdiction" from section 263.401(b).[23] The current version of section 263.401(b) merely provides that the trial court "may retain the suit on the court's docket for a period not to exceed 180 days";[24] it no longer contains the "extend the court's jurisdiction" phrase in the former statute that has been construed as meaning that the trial court loses jurisdiction on the first anniversary of the case if it does not order an extension not to exceed the 180-day time period.[25]
We believe this change in the wording of section 263.401(b), coupled with the waiver language in section 263.402, clearly indicates that as of September 1, 2001, the legislature intended to eliminate the previous limitation on the trial court's jurisdiction.[26] Because the changes to sections 263.401 and 263.402 confer extended jurisdiction on trial courts in termination suits, the changes are remedial in nature and do not impair appellants' substantive rights since the changes relate only to the trial court's power to hear such cases rather than to the rights or obligations of any party.[27]
In addition, we do not believe appellants' right under the former statute to challenge the trial court's failure to dismiss this case for the first time on appeal is a vested substantive right that would preclude *225 retroactive application of the waiver provision in current section 263.402(b). There is no right to complain of unpreserved trial court error for the first time on appeal, except when the error is fundamental.[28] Moreover, the right to complain of trial court error on appeal is a procedural right;[29] it is not a vested substantive right protected by article I, section 16 of the Texas Constitution. At most, appellants had a mere expectation that the right to challenge the trial court's failure to dismiss on jurisdictional grounds for the first time on appeal would continue in effect after the statute was amended. Such an expectation is not a vested right.[30] Therefore, applying the waiver provision to this case does not affect appellants' substantive rights.
Likewise, applying the waiver provision here will not create an unjust or absurd result.[31] Despite ample opportunity to do so, appellants never objected at any stage of the trial court proceedings to the trial court's failure to dismiss the termination suit, nor did they give any indication that they wanted the trial court to dismiss the suit. Thus, our conclusion that appellants waived their right to complain for the first time on appeal of the trial court's failure to dismiss does not "work an injustice" under the circumstances of this case.[32]
In sum, we hold that the amendments to section 263.401 were intended to eliminate the limitations placed on the trial courts' jurisdiction over termination suits under the former statute; that the changes to section 263.401 are remedial and procedural in nature and do not take any vested substantive rights from appellants; that applying the waiver provision to this case does not create an unjust or absurd result; that the trial court had jurisdiction over the case when it rendered the October 2001 termination decree; and that its act of rendering the decree outside the statutory time period was, at most, voidable, not void.[33] We further hold that because the October 2001 termination decree is not void, appellants waived their right to complain about the trial court's failure to dismiss the case or to challenge the validity of the decree since they did not raise their objections in the trial court.[34] We overrule appellants' third issue.[35]

*226 Evidence Supporting Termination
The trial court terminated appellants' parental rights on several grounds, including that they had engaged in conduct or knowingly placed the children with persons who engaged in conduct that endangered the children's emotional or physical well-being.[36] In their fifth issue, appellants challenge the factual sufficiency of the evidence to support this ground for termination. In her seventh issue, Frances also challenges the factual sufficiency of the evidence to support the trial court's finding that termination of the parent-child relationship was in the children's best interest.
We must affirm the termination decree if clear and convincing evidence supports one of the grounds for terminating Frances's and David's parental rights and shows that termination would be in the children's best interest.[37] "Clear and convincing evidence" is defined as the "measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established."[38] This intermediate standard falls between the preponderance standard of ordinary civil proceedings and the reasonable doubt standard of criminal proceedings.[39] While the proof must be more than merely the greater weight of the credible evidence, there is no requirement that the evidence be unequivocal or undisputed.[40]
Section 161.001(1)(E) requires us to look at the parent's conduct alone, including actions or omissions or failures to act.[41] "Endanger" under section 161.001(1)(E) means to expose to loss or injury, to jeopardize.[42] The term means more than a threat of "metaphysical injury," but it is not necessary that the conduct be directed at the child or that the child actually suffer injury.[43] Nevertheless, there must be evidence of endangerment to the child's physical or emotional well-being as the direct result of the parent's conduct.[44] Additionally, termination under section 161.001(1)(E) must be based on more than a single act or omission; a voluntary, deliberate, and conscious "course of conduct" by the parent is required.[45]
*227 Factors we consider in deciding whether termination is in a child's best interest include: the desires of the child; the present and future physical and emotional needs of the child; the present and future emotional and physical danger to the child; the parental abilities of the person seeking custody; programs available to assist those persons in promoting the best interest of the child; plans for the child by those individuals or by the agency seeking custody; the acts or omissions of the parent that may indicate that the existing parent-child relationship is not appropriate; and any excuse for the acts or omissions of the parent.[46] Proof of acts or omissions under section 161.001(1) may also be probative of whether termination is in the child's best interest.[47]
The evidence in the record shows: At the time the events giving rise to the termination proceeding occurred, J.B.W. was four years old, and K.G. was sixteen months old. Frances and David were living with the children in a motel room with five dogs, including a "fairly vicious" Rottweiler. Frances left J.B.W. and K.G. in David's care despite being very afraid of him and being well aware of his violent temper, anger control problems, and criminal history, which included prior convictions for assault and aggravated assault.
After David was left alone with the children on March 6, 1999, he went next door to the neighbor's to verify from Charlie Smith and her husband Carlton that Frances and her parents had gone to wash clothes. Later, David asked the Smiths to check on the children periodically while he went to find Frances and her parents. About two minutes after David left, Carlton Smith went next door to check on the boys, where he found J.B.W. crying, shaking, and bleeding from one eye. K.G. was in the room with J.B.W. J.B.W. told the Smiths that David had hit him with a dog collar. David had made no mention of J.B.W.'s injury when he asked the Smiths to check on the boys.
Carlton Smith called 9-1-1 and asked for an ambulance. While the Smiths were waiting for the ambulance to arrive and tending to J.B.W.'s injury, Frances returned to the motel with David close behind. Frances became hysterical upon seeing J.B.W.'s eye and insisted that the police be called. David threw the Smiths' telephone into the motel parking lot and argued with Frances; however, he left the scene before the police or ambulance arrived.
Approximately two weeks before the March 6 incident, Charlie Smith had noticed a bruise on the upper front portion of K.G.'s right thigh, which resembled a hand print. Frances told Charlie that David had caused the bruise by hitting K.G. too hard as a form of punishment. Frances later denied these allegations, however, and testified that Charlie was not truthful. David claimed that the bruising had occurred when K.G.'s leg was pinched by a car seat-belt buckle. Sergeant Chris Hebert, an investigator with the Forest Hill Police Department, also noticed the bruise when he saw the children on March 7 or 8. Frances reported to Hebert that K.G. had been slapped. Child Protective Services (CPS) supervisor George Cannata also noticed the bruise, along with bruises on K.G.'s right eye and forehead, when he first met with the children after March 6.
Hebert also photographed several "strap marks" on J.B.W.'s thigh, back, and face, extensive bruising on his left thigh, and marks on his neck that were consistent *228 with strangulation. J.B.W. told Hebert that David had inflicted the injuries with a belt. David admitted at trial that J.B.W. used the term "belt" to refer to the collars and leashes the family used for their dogs. He testified that he had not struck J.B.W. intentionally, but that he had tossed a dog collar back into the motel room while attempting to restrain his dogs, and that the collar must have hit J.B.W. He also claimed to have accidentally knocked J.B.W. into an air conditioner while attempting to restrain a dog.
After J.B.W.'s injuries were photographed and treated at the hospital on March 6, Frances went with the boys to a women's shelter, where she signed an agreement not to leave the shelter and to have no contact with David. While Frances was in the shelter, another resident there overheard her having a romantic conversation with someone, in which she said "how much she missed him and she wanted to hold him and be with him, sending him kisses over the phone, telling him they will be together soon." Frances also asked the fellow resident whether it would be possible for her to take her children and just walk away from the shelter and mentioned her plan to leave the following morning. Frances told the other resident that the police would not find David because he was hiding at his mother's house, and Frances would not reveal his whereabouts to police.
Frances denied having ever spoken with David while in the shelter and claimed that the other resident had not told the truth. But CPS workers also found a letter dated March 7, 1999, which Frances admitted having written. Although the letter was never sent, it too described how much Frances loved and missed David and wanted to be with him. The letter also said, "You are still J.B.'s daddy, and you always will be...." As a result of Frances's actions, CPS feared that Frances would reunite herself and the children with David. Consequently, CPS intervened and removed the children from Frances's custody.
On June 28, 1999, David was found lying in the bed of his truck and was arrested by police. He was charged with and convicted of injury to a child (J.B.W.) and received a six-year prison sentence. David denied having hidden from police, but admitted that he had been aware of the warrant for his arrest and that he had not purposefully turned himself in to the police. At trial, David admitted that he had been incarcerated since his June 1999 arrest and still had to serve three years and nine months of his sentence if he was not granted parole.
Frances downplayed the March 7 letter at trial and testified that she was afraid of David and would do whatever she could to keep the children away from him. But a Child Advocates (CASA) witness testified that Frances had said in January 2000 that she not only still considered David a family member, but also intended to marry him once he got out of jail. Frances claimed that the CASA witness was not telling the truth.
Meanwhile, by the time of trial, J.B.W. and K.G. had shown remarkable progress while in the care of the foster family who wanted to adopt them. According to foster mother Monica Brown, J.B.W. had gone from needing speech therapy and not knowing how to dress himself to needing no more speech therapy and being able to dress himself. J.B.W. had also learned how to brush his teeth, run his own bath or shower, and return things to their proper places. Likewise, K.G. had adapted quickly to "potty-training." Brown testified that neither Frances nor David had ever tried to call to set up a meeting with either of the children. Frances also admitted *229 that she had not visited her children from June 2000 through July 2001.
At trial, a CASA volunteer and a TDPRS caseworker both recommended that appellants' parental rights be terminated due to the severity of the injuries that David had inflicted on J.B.W.; Frances's failure to stay in contact with the children, CASA, or TDPRS, despite attempts to contact her; the children's progress while in foster care; David's incarceration for abusing J.B.W.; and the totality of the facts reflected in the case file, including the doctor's reports and the photographs depicting what the children had endured.
Having reviewed the record, we hold that the evidence was sufficient to produce in the mind of the trial court, as fact finder, a firm belief or conviction that Frances and David had each engaged in a course of conduct that endangered the children's emotional or physical well-being. Frances left David alone to care for the children, despite her fear of him and her knowledge of his violent temper, his prior assault convictions, and his then-recent bruising of K.G. while attempting to discipline him. David severely injured J.B.W., left him alone with sixteen-month-old K.G. instead of seeking medical treatment, and then hid from police at his mother's house instead of owning up to the assault. Frances and David both later denied that David's injury of J.B.W. had been intentional or that David had injured K.G. In addition, Frances attempted to reunite with David within a few days after J.B.W. was injured, and there is evidence that she had plans to reunite with David once he was released from prison.
This evidence, along with the evidence of David's prolonged incarceration, Frances's failure to complete her service plan or keep in contact with TDPRS or the children, and the children's good progress in the care of a foster family who wished to adopt them, was also sufficient to produce in the mind of the trier of fact a firm belief or conviction that termination was in the children's best interests. Accordingly, we overrule appellants' fifth issue and Frances's seventh issue. In light of our holding, we need not consider Frances's fourth and sixth issues and David's fourth issue, in which they challenge the sufficiency of the evidence to support other grounds for termination.

Lost Reporter's Record
Frances combined her statement of points on which she intended to appeal with a motion for new trial, as is permitted by section 263.405(b).[48] On November 16, 2001, the trial court held a hearing, as is required by section 263.405(d), to determine whether: (1) a new trial should be granted; (2) any claims of indigence should be sustained; and (3) the appeal was frivolous.[49] The trial court denied appellants a new trial, but found that they were indigent and that their appeal was not frivolous.[50]
In Frances's eighth issue and David's sixth issue, they point out that the reporter's record from the November 16 hearing has been lost.[51] They contend that they *230 could potentially have been severely prejudiced by this loss, "[d]epending upon what the other parties argue in their briefs and upon whether the parties disagree on what occurred at the hearing." They thus reserve the right to complain about the absence of the November 16, 2001 reporter's record "in the event it becomes relevant to any of [their] issues."
TDPRS's briefs have been on file since March 22, 2002, and appellants have not asserted that any argument in the briefs has prejudiced them due to the lost record or that the parties disagree on what occurred at the November 16 hearing. Accordingly, we will presume that the lost portion of the reporter's record is not necessary to the disposition of this appeal.[52] In addition, our disposition of appellants' evidentiary issues demonstrates that they were not entitled to a new trial. We overrule Frances's and David's eighth and sixth issues, respectively, and affirm the trial court's judgment.
NOTES
[1] See Act of May 26, 1997, 75th Leg., R.S., ch. 603, § 12, 1997 Tex. Gen. Laws 2119, 2123 (amended 2001) (current version at TEX. FAM. CODE ANN. § 263.401 (Vernon 2002)).
[2] See Tex. Fam.Code Ann. § 263.405(b) (Vernon 2002) (providing that party intending to appeal termination order must file with trial court a "statement of the point or points" on which party intends to appeal).
[3] See Tullos v. Eaton Corp., 695 S.W.2d 568, 568 (Tex.1985); Tarrant County v. Vandigriff, 71 S.W.3d 921, 925 (Tex.App.-Fort Worth 2002, pet. denied).
[4] See In re D.R.L.M., 84 S.W.3d 281, 291 (Tex.App.-Fort Worth 2002, pets. denied) (holding that litigant's failure to file section 263.405(b) statement of points within fifteen days of date of final order does not deprive appellate court of jurisdiction over appeal).
[5] Because we hold appellants may raise their jurisdictional complaint, we need not reach appellants' first and second issues complaining that their due process and equal protection rights will be violated if they are precluded from challenging the trial court's subject matter jurisdiction on appeal.
[6] Tex. Fam.Code Ann. § 263.401(a).
[7] Id. § 263.401(b).
[8] Id. § 263.401(c).
[9] Id. § 263.402(b).
[10] Id.
[11] Act of May 22, 2001, 77th Leg., R.S., ch. 1090, §§ 10-11, 2001 Tex. Gen. Laws 2395, 2398. A suit is pending from the time of its inception until the rendition of judgment. Sims v. Adoption Alliance, 922 S.W.2d 213, 215 (Tex.App.-San Antonio 1996, writ denied).
[12] See Tex. Fam.Code Ann. § 263.402(b).
[13] Act of May 26, 1997, 75th Leg., R.S., ch. 603, § 12, 1997 Tex. Gen. Laws 2119, 2123 (emphasis supplied).
[14] See In re C.V.G., No. 01-01-00456-CV, slip op. at 9-10, 2002 WL 31429763, at *3, ___ S.W.3d ___, ___ - ___ (Tex.App.-Houston [1st Dist.] Oct. 31, 2002, no pet. h.).
[15] In re Tex. Dep't of Protective & Regulatory Servs., 71 S.W.3d 446, 450 (Tex.App.-Fort Worth 2002, orig. proceeding) (quoting Ex parte Abell, 613 S.W.2d 255, 260 (Tex.1981) (orig. proceeding)).
[16] Subaru of Am., Inc. v. David McDavid Nissan, Inc., 84 S.W.3d 212, 219 (Tex.2002); Abell, 613 S.W.2d at 260.
[17] Abell, 613 S.W.2d at 260.
[18] Landgraf v. USI Film Prods., 511 U.S. 244, 274, 114 S.Ct. 1483, 1501-02, 128 L.Ed.2d 229 (1994); Subaru, 84 S.W.3d at 220; Abell, 613 S.W.2d at 260; see also Lukes v. Employees Ret. Sys., 59 S.W.3d 838, 841-42 (Tex. App.-Austin 2001, no pet.) (holding that statutory change giving court jurisdiction over pending lawsuit, where none had existed before, was remedial and applied retrospectively).
[19] DuPre v. DuPre, 271 S.W.2d 829, 831 (Tex. Civ.App.-Dallas 1954, no writ).
[20] Subaru, 84 S.W.3d at 219 (quoting Middleton v. Tex. Power & Light Co., 108 Tex. 96, 185 S.W. 556, 560 (1916)).
[21] Tex. Dep't of Protective & Regulatory Servs., 71 S.W.3d at 451 (citing Phil H. Pierce Co. v. Watkins, 114 Tex. 153, 263 S.W. 905, 907 (1924)).
[22] See C.V.G., No. 01-01-00456-CV, slip op. at 9-10, 2002 WL 31429763, at *3, ___ S.W.3d at ___ - ___.
[23] Act of May 22, 2001, 77th Leg., R.S., ch. 1090, § 8, 2001 Tex. Gen. Laws 2395, 2396.
[24] Tex. Fam.Code Ann. § 263.401(b). Like the waiver provision, amended section 263.401(b) became effective on September 1, 2001 and applied to all pending termination suits filed before, on, or after September 1. See supra note 11.
[25] See C.V.G., No. 01-01-00456-CV, slip op. at 9-10, 2002 WL 31429763, at *3, ___ S.W.3d at ___.
[26] See Meritor Auto., Inc. v. Ruan Leasing Co., 44 S.W.3d 86, 90 (Tex.2001); D.R.L.M., 84 S.W.3d at 290 (both holding that courts should not assign a meaning to a statutory term or provision that would be inconsistent with other provisions of the statute).
[27] Landgraf, 511 U.S. at 274, 114 S.Ct. at 1501-02; Subaru, 84 S.W.3d at 220. As a consequence of the amendments extending the trial court's jurisdiction, the deadlines in section 263.401 that were once held to be jurisdictional are now clearly procedural and thus waivable. Tex. Fam.Code Ann. § 263.402(b).
[28] Pirtle v. Gregory, 629 S.W.2d 919, 920 (Tex. 1982).
[29] See Tex.R.App. P. 33.1(a); Bushell v. Dean, 803 S.W.2d 711, 712 (Tex.1991) (op. on reh'g).
[30] Subaru, 84 S.W.3d at 219; DuPre, 271 S.W.2d at 831.
[31] See C & H Nationwide, Inc. v. Thompson, 903 S.W.2d 315, 322 n. 5 (Tex.1994); Meno v. Kitchens, 873 S.W.2d 789, 792 (Tex.App.-Austin 1994, writ denied) (both holding that courts should not construe a statute in a way that would lead to an absurd or unjust result).
[32] Meno, 873 S.W.2d at 792.
[33] See Mapco, Inc. v. Forrest, 795 S.W.2d 700, 703 (Tex.1990) (orig. proceeding) (clarifying that a court's action taken contrary to a statute, constitutional provision, or procedural rule is merely voidable or erroneous, not void).
[34] See Tex. Fam.Code Ann. § 263.402(b); see also Tex.R.App. P. 33.1(a).
[35] Appellants raise several other arguments for the first time on appeal concerning the effect of the trial court's May 2001 dismissal of TDRPS's 1999 lawsuit. Because these unpreserved arguments do not pertain to the trial court's jurisdiction or other fundamental error and, in some instances, are not even briefed, they are also waived. See Tex.R.App. P. 33.1(a); see also Tex.R.App. P. 38.1(h) (requiring a clear and concise argument with appropriate citations to legal authorities); Fredonia State Bank v. Gen. Am. Life Ins. Co., 881 S.W.2d 279, 284 (Tex.1994) (noting longstanding rule that a point may be waived due to inadequate briefing); Wal-Mart Stores, Inc. v. Alexander, 868 S.W.2d 322, 328 (Tex.1993) (stating what constitutes fundamental error). Because these arguments are waived based on general waiver principles, we need not decide whether they are also waived due to appellants' failure to list them in their statements of points on appeal, as required by section 263.405(b). Tex. Fam.Code Ann. § 263.405(b).
[36] See id. § 161.001(1)(E).
[37] Id. §§ 161.001, 161.206(a); Richardson v. Green, 677 S.W.2d 497, 499 (Tex.1984).
[38] Tex. Fam.Code Ann. § 101.007; see also Transp. Ins. Co. v. Moriel, 879 S.W.2d 10, 31 (Tex.1994).
[39] In re C.H., 89 S.W.3d 17, 25-26 (Tex. 2002); State v. Addington, 588 S.W.2d 569, 570 (Tex.1979); In re D.T., 34 S.W.3d 625, 630 (Tex.App.-Fort Worth 2001, pet. denied) (op. on reh'g).
[40] Addington, 588 S.W.2d at 570.
[41] D.T., 34 S.W.3d at 634; In re B.S.T., 977 S.W.2d 481, 484 (Tex.App.-Houston [14th Dist.] 1998, no pet.), disapproved on other grounds by C.H., 89 S.W.3d at 26.
[42] Tex. Dep't of Human Servs. v. Boyd, 727 S.W.2d 531, 533 (Tex.1987).
[43] Id.
[44] In re R.D., 955 S.W.2d 364, 366 (Tex.App.-San Antonio 1997, pet. denied); Dupree v. Tex. Dep't of Protective & Regulatory Servs., 907 S.W.2d 81, 83-84 (Tex.App.-Dallas 1995, no writ).
[45] D.T., 34 S.W.3d at 634.
[46] Holley v. Adams, 544 S.W.2d 367, 371-72 (Tex.1976); D.T., 34 S.W.3d at 641.
[47] C.H., 89 S.W.3d at 27.
[48] Tex. Fam.Code Ann. § 263.405(b).
[49] Id. § 263.405(d).
[50] David filed a statement of points on appeal, but did not seek a new trial. We need not decide whether David was required to request a new trial in order to be entitled to a new hearing under section 263.405(d) because a decision on that issue is not necessary to our disposition of this appeal. See TEX. R.APP. P. 47.1.
[51] Appellants did not raise this complaint in their statements of issues on appeal. See TEX. FAM.CODE ANN. § 263.405(b). The State concedes that this complaint should not be waived on that basis, however, because appellants could not have been expected to know that part of the reporter's record was lost until the court reporter so certified.
[52] See Tex.R.App. P. 34.6(f)(3).