NO. 07-04-0250-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

OCTOBER 21, 2004

______________________________

In the Interest of D.C.G. and D.J.W., Children

_________________________________

FROM THE 64
TH
 DISTRICT COURT OF HALE COUNTY;

NO. A29926-9809; HON. KEVIN C. HART, PRESIDING

_______________________________

Memorandum Opinion

_______________________________

Before QUINN, REAVIS, and CAMPBELL, JJ.

Michelle Gonzales (Gonzales) appeals from an order terminating the parent-child relationship between her, D.C.G. and D.J.W.  Her three issues involve whether 1) the action had to be dismissed since a final order had not issued within the time specified by statute, 2) sufficient evidence supports the decision to terminate, and 3) the trial court erred in terminating upon a ground which was not pled.  We affirm the order of termination.

Issue One – Dismissal as Untimely

Gonzales first contends that the action had to be dismissed.  This is purportedly so because the trial court neither executed a final order within the time period specified under §263.401 of the Texas Family Code nor extended, within the applicable window of opportunity, that one-year period.  In asserting her argument, though, Gonzales did not refer us to the location in the record whereat she moved the trial court to dismiss per §263.401.  Nor did our review of the appellate record uncover such a motion or a request for a final order.  This is fatal since omitting to timely seek either a dismissal or a final order results in the waiver of any objection founded upon §263.401.
(footnote: 1)  
Tex. Fam. Code Ann
.
 §263.402(b) (Vernon 2002).  So, because Gonzales failed to timely move for dismissal or request a final order, we overrule issue one.

Issue Two – Sufficiency of the Evidence

Standard of Review

Gonzales next contends that the evidence was both legally and factually insufficient to support the termination of her parental rights.  In determining whether she is correct we must abide by the standards of review explained in 
In re J.F.C., 
96 S.W.3d 256 (Tex. 2002) and 
In re C.H., 
89 S.W.3d 17 (Tex. 2002).  They require us, when addressing a factual sufficiency complaint, to consider all the evidence of record and determine if it would permit a factfinder to reasonably form a firm belief or conviction about the truth of the State’s allegations.  
In re J.F.C., 
96 S.W.3d at 266; 
In re C.H., 
89 S.W.3d at 25.  Implicit in these standards is our obligation to accord the factfinder the deference needed for it to fulfill its role.  
In re C.H., 
89 S.W.3d at 25-26.  Furthermore, if the evidence is factually sufficient, then, it is also legally sufficient.  This is so because, logically, there cannot be “no evidence” of record if the record contains enough evidence to enable the factfinder to reasonably form a firm belief or conviction as to the existence of pivotal facts.  With this said, we turn to the complaints before us. 

Immediately we note that Gonzales says nothing about the requirement that the factfinder decide whether termination is in the best interests of the children.  Instead, she focuses her attack upon the findings that she 1) knowingly placed or knowingly allowed the children to remain in conditions or surroundings which endangered the physical or emotional well-being of the children, 
see 
Tex. Fam. Code Ann
.
 §161.001(1)(D) (Vernon 2002) (stating that as a ground for termination of the parent-child relationship), and 2) engaged in conduct or knowingly placed the children with persons who engaged in conduct which endangered the physical or emotional well-being of the children.  
See id.
 at §161.001(1)(e) (stating that as a ground for termination as well).  So, we will not assess the quantum of evidence underlying the decision that termination would be in the best interests of the children.  Instead, we limit our review to the issues actually mentioned.

According to the record before us, Gonzales, an admitted drug addict, gave birth to her first child subject to these proceedings in 1994 and the second in 1997.  Furthermore, neither child was in her custody at the time of the termination hearing.  Nor could they have been for she was then serving her first year of a five-year prison sentence for engaging in organized crime.  Prior to beginning that sentence, Gonzales had been serving an eight- year term of probation.  And, during that period she lived with her two children in less than a stable environment.  According to her testimony, she was “kind of staying everywhere,” which included “staying with [her] grandmother” and “with [her] friend on the street or in the apartments.”  So too did she use drugs (crack cocaine) “off and on” while on probation.  That such conduct was a violation of the terms of probation was something she conceded at trial.  Yet, those were not the only terms that she violated.  She also repeatedly failed to report to her probation officer.  She began to associate with a person having a criminal record.  She did not maintain employment; indeed, the longest period in which she held a job was six and one-half months.  Nor did Gonzales abide by her curfew, attend narcotics anonymous classes, or attend the “GED lab.”  All of those were required of her and could have provided basis to revoke her probation at any time. These circumstances are of import because Gonzales had no support system in place to care for her or her children had she been imprisoned.  According to her own testimony, her parents and family were either taking or selling drugs; so, they were of little help.  And, it was due to this missing support system that she “gave up” and resumed her consumption of narcotics though having to care for her own two children.   

More telling is that while released on bond pending appeal after her probation was revoked and the trial court sentenced her to five years imprisonment, she again used drugs though knowing “that staying off of . . . [them] was going to be important . . . to have a chance to get [her] children back . . . .”
(footnote: 2)  The record further illustrates that during the seven- month period while released on bond, Gonzales ceased all contact not only with her Child Protective Services case worker but also her own children.   

The children needed stability.  That was not being provided by Gonzales, according to her own testimony.  Nor would she be able to provide it while in prison or “for some time after” being released.

To engage in conduct that endangers the physical or emotional well-being of the children does not require that the children either be the focus of those acts or actually harmed by them.  
In re C.J.F.
, 134 S.W.3d 343, 351 (Tex. App.–Amarillo 2003, pet. denied)
.  Rather, it is enough to simply show that the parent engaged in a course of conduct having the effect of endangering the child.  
Id.
 at 352.  And, engaging in intentional criminal activity while knowing that it could result in imprisonment can be such a course of conduct.  
In re AWT
, 61 S.W.3d 87, 89-90 (Tex. App.–Amarillo 2001, no pet.); 
see Texas Dept. Human Serv. v. Boyd
, 727 S.W.2d 531, 534 (Tex. 1987) (holding that if evidence, including that of imprisonment, shows a course of conduct which has the effect of endangering the physical or emotional well-being of a child, termination under the similarly worded predecessor to §161.001(1)(E) could result); 
Allred v. Harris County Child Welfare Unit
, 615 S.W.3d 803, 806 (Tex. App.–Houston [1
st
 Dist.] 1980, writ ref’d n.r.e.) (wherein the parent-child relationship was terminated because, among other things, the father committed numerous crimes while on parole and knowing that their commission could result in the revocation of his parole).  Here, the record permitted a factfinder to reasonably develop a firm belief or conviction that Gonzales engaged in a course of conduct having the effect of endangering her children.  She, an addict using drugs “off and on,” was providing her offspring with an unstable environment while on probation.  So too did she engage in activities, some criminal and some not, which she knew could result in the revocation of that probation and subsequent imprisonment.  And, if the latter occurred, no one, other than the State and its child foster programs, would have been available to care for her daughters.  That Gonzales professed repentance on the witness stand does not change our conclusion.  By that time, the 28-year-old woman had already exposed her children to her endangering conduct.  Repentance may have been an indicia that the factfinder could have considered, but it did not obligate the factfinder to either believe the penitent or continue the parent-child relationship.  Accordingly, the evidence underlying termination of the parent-child relationship on the basis of §161.001(1)(E) of the Family Code was both legally and factually sufficient.  

That the evidence supports termination on one ground pled by the State relieves us from determining whether the State also proved the other ground for termination.  
In re J.B.W.
, 99 S.W.3d 218, 226 (Tex. App.–Fort Worth 2003, pet. denied) (stating that the decision to terminate must be affirmed if clear and convincing evidence supports one ground for termination).  Thus, we overrule issue two.

Next, our decision to overrule issue two relieves us from having to address issue three.  Simply put, since the evidence was sufficient to warrant termination on the basis of §161.001(1)(E), it does not matter if the State also pled §161.001(1)(Q) as a basis for termination.

Accordingly, the judgment of the trial court is affirmed.

Brian Quinn

   Justice

FOOTNOTES
1:
A motion to dismiss due to the failure to comply with the deadline imposed by §263.401(a) of the Texas Family Code or a request for a final order is timely if made before the Department introduces all its evidence at the trial on the merits, save for rebuttal evidence.  
Tex. Fam. Code Ann
.
 §263.402(b) (Vernon 2002).

2:
The children had been removed from her possession before her imprisonment.