COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                        NO.
2-05-308-CV

 

 

IN THE INTEREST OF                                                                            

C.A.L., A CHILD                              

                                                                                                        

 

                                              ------------

 

            FROM
THE 393RD DISTRICT COURT OF DENTON COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------








Appellant Jennifer R. appeals
the trial court=s order
terminating her parental rights in her child, C.A.L.  In three issues, Jennifer asserts that the
trial court abused its discretion in determining that Jennifer=s appeal is frivolous because there are four arguable bases for her
appeal, and she contends that section 263.405 of the family code is
unconstitutional for two reasons.  In six
issues, Appellant Mary L., C.A.L.=s maternal grandmother who intervened in the case in the trial court,
asserts that the trial court erred in ruling that her appeal is frivolous, and
she contends that section 263.405 of the family code[2]
is unconstitutional for five reasons.[3]  We affirm.

CONSTITUTIONAL CHALLENGES








Jennifer=s third issue and Mary=s sixth issue allege that the provision in section 263.405 requiring
the trial court to determine whether an appeal is frivolous, which could
involve a factual sufficiency review, violates the separation of powers clause
of the Texas Constitution because it interferes with the power that courts of
appeals are assigned under article V, section 6(a) of the constitution to
decide factual sufficiency complaints.  See
Tex. Const. art. II, '1; art. V, '6(a).  We have previously addressed this contention
and held that the statute is not unconstitutional under the separation of
powers clause of the Texas Constitution. 
See In re M.R.J.M., 193 S.W.3d 670, 676 (Tex. App.CFort Worth 2006, no pet.) (en banc). 
We overrule Jennifer=s third issue and Mary=s sixth issue.

Jennifer=s second issue alleges that section 263.405 is unconstitutional as
applied to her in that it violates the equal protection clauses of the United
States and Texas Constitutions.  Mary=s issues two through five allege that section 263.405 is
unconstitutional because it violates the equal protection and due process
clauses of the United States and Texas Constitutions.  We have previously held that these challenges
have no merit.  See In re K.D.,
202 S.W.3d 860, 865 (Tex. App.CFort Worth 2006, no pet.) (op. on reh=g); In re T.C. & G.C., 200 S.W.3d 788, 792 (Tex. App.CFort Worth 2006, no pet.). Accordingly, we overrule Jennifer=s second issue and Mary=s issues two through five.

              REVIEW OF THE TRIAL COURT=S FRIVOLOUS FINDINGS








In Jennifer=s first issue, she contends her appeal is not frivolous because  she was denied a jury trial, she received
ineffective assistance of counsel, and the evidence is legally and factually
insufficient to support the trial court=s findings that termination is in the best interest of C.A.L. and that
Jennifer committed any of the grounds for termination found by the court.  In Mary=s first issue, she contends the trial court abused its discretion in
striking her petition in intervention. 
After Appellants' briefs were filed, we requested the court reporter and
clerk to provide a full record of the termination trial.[4]

Standard of
Review 








The trial court found that
both Appellants= appeals
were frivolous.  In determining whether
an appeal is frivolous, Aa judge may
consider whether the appellant has presented a substantial question for
appellate review.@  Tex.
Civ. Prac. & Rem. Code Ann. ' 13.003(b) (Vernon 2002); Tex.
Fam. Code Ann. '
263.405(d)(3) (incorporating section 13.003(b) by reference).  As we have previously held, it is well
established that a proceeding is frivolous when it lacks an arguable basis
either in law or in fact.  In re K.D.,
202 S.W.3d at 866.  We review a trial
court=s finding of frivolousness under an abuse-of-discretion standard.  Id.; In re M.R.J.M., 193 S.W.3d at
673.  To determine whether a trial court
abused its discretion, we must decide whether the trial court acted without
reference to any guiding rules or principles; in other words, we must decide
whether the act was arbitrary or unreasonable. 
Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241-42
(Tex. 1985), cert. denied, 476 U.S. 1159 (1986).  Merely because a trial court may decide a
matter within its discretion in a different manner than an appellate court
would in a similar circumstance does not demonstrate that an abuse of
discretion has occurred.  Id.

Termination is proper if the
record establishes by clear and convincing evidence one or more of the grounds
for termination enumerated in family code section 161.001(1) and that
termination is in the child=s best interest.  Tex. Fam. Code Ann. ' 161.001 (Vernon Supp. 2006); In re J.L., 163 S.W.3d 79, 84
(Tex. 2005).  Clear and convincing
evidence is defined as Athe measure
or degree of proof that will produce in the mind of the trier of fact a firm
belief or conviction as to the truth of the allegations sought to be
established.@  Tex.
Fam. Code Ann. ' 101.007
(Vernon 2002).

Jennifer=s Issue

In her first issue, Jennifer
contends the trial court abused its discretion in finding her appeal to be
frivolous.  Her issue presents four
separate subparts.

                                     I.  Denial Of Jury Trial

Jennifer alleges that the
trial court erred and abused its discretion in denying her request for a jury
trial.  Rule 216 of the Texas Rules of
Civil Procedure provides,








No jury trial shall be had in any civil suit,
unless a written request for a jury trial is filed with the clerk of the court
a reasonable time before the date set for trial of the cause on the non-jury
docket, but not less than thirty days in advance.

 

Tex. R. Civ. P. 216.  We review the trial
court's denial of a jury demand under an abuse-of-discretion standard.  See Mercedes‑Benz Credit Corp. v.
Rhyne, 925 S.W.2d 664, 666 (Tex. 1996). 
In conducting an abuse-of-discretion review, we examine the entire
record.  See id.








The Texas Department of
Family and Protective Services (the Department) filed its termination petition
on February 4, 2004.  Jennifer's
attorney, Jamie Beck, was appointed on October 25, 2004, when termination was
announced by the Department as its goal. 
On January 24, 2005, Beck was given notice by the Department of a final
hearing date for February 1, 2005.  On
that date, all the parties appeared and the court entered an order extending
the dismissal date pursuant to section 263.401(c) of the family code.  See Tex.
Fam. Code Ann. '
263.401(c).  In its February 23 order,
the trial court extended the mandatory dismissal date to August 6, 2005 and set
a date for a "FINAL HEARING" for June 7, 2005 at 9:00 a.m.  On June 2, 2005, Beck filed a request for
jury trial on behalf of Jennifer.  On
June 7, the trial judge was unavailable for trial, and on June 8 the court
signed an order entitled "NOTICE OF TERMINATION HEARING," setting a
hearing for July 1, 2005.  On June 30,
Beck filed a motion to strike the nonjury setting, which motion was denied on
July 1 immediately prior to commencement of the trial before the court.

At the postjudgment
frivolousness hearing held pursuant to section 263.405(d)(3), Beck testified
that on June 1, 2005 she became aware that the Department's goal had changed
from reunification to termination. 
However, on cross-examination she acknowledged that at the fifth
permanency planning team meeting on May 17, 2005, she became aware that the
attorney for the Department changed the Department=s goal to termination.








Beck agreed that, in the
course of representing her client in this matter  she appeared at numerous court hearings and
exchanged phone calls and emails with all of the parties involved between the
time of her appointment on October 25, 2004 and the termination trial on July
1, 2005.  Beck acknowledged that she has
handled numerous cases as a Achild=s attorney@ and handled Aten or under@ cases representing parents in cases involving Child Protective
Services (CPS).  She agreed she has
substantial experience in these types of cases. 
She understands that the facts in cases involving CPS may change
dramatically and often quickly, and it was not a surprise to her that things
changed in this case.  She further stated
that she was aware that throughout the entire proceedings the ad litem attorney
for C.A.L. and the CASA representative (the guardian ad litem for C.A.L.)
consistently opposed reunification. 
Additionally, Beck acknowledged that the goal of the Department=s attorney, but not necessarily the Department, was consistently
termination, not reunification.

Amy Lord testified at the
frivolousness hearing that she has been the attorney ad litem for C.A.L. from
the inception of this case.  She stated
that Beck was appointed to represent Jennifer in October 2004 because at that
time the Department announced its intention to pursue termination.  In January 2005, the Department changed its
goal to reunification, but on May 17, 2005 changed its goal back to
termination.  Lord reaffirmed that her
position as attorney ad litem for C.A.L. has consistently been that Jennifer=s parental rights should be terminated.

Jennifer contends this case
is governed by the holding of Bell Helicopter Textron, Inc. v. Abbott,
863 S.W.2d 139 (Tex. App.CTexarkana
1993, writ denied).  In Bell, the
court held that because Bell was not given the required forty-five days= notice of the trial setting, it was impossible for Bell to comply
with the requirements of rule 216.  Id.
at 140-41.  Although Jennifer contends
that she received less than forty-five days= notice of the trial setting, on February 23, 2005 the trial court
entered an order notifying the parties that the case was set for AFINAL HEARING@ on June 7,
2005.  Thus, in actuality Jennifer
received over four months= notice of
the June 7 trial setting, and we find the holding in Bell is not
applicable to these facts.








Jennifer=s attorney acknowledged that the petition filed by the Department on
February 4, 2004 sought termination of Jennifer=s parental rights.  The
termination petition was filed over sixteen months before the trial.  Although the Department at some point was
working toward reunification of the family, as of May 17, 2005 Beck was aware
that the Department=s goal was
again termination of Jennifer=s parental rights.  Further,
Beck was aware that throughout these proceedings the attorney ad litem and the
guardian ad litem for C.A.L. had consistently opposed reunification.  Beck is an experienced family law attorney
who has been extensively involved in the various meetings and discussions among
the participants in this case.  Through
her attorney, Jennifer received notice of the trial setting over four months
before the setting.  Based upon these
facts, we hold that the trial court did not abuse its discretion in denying
Jennifer=s untimely request for a jury trial.

                           II.  Ineffective Assistance Of Counsel 








Jennifer contends that her
trial counsel was ineffective because she failed to timely request a jury
trial.  To establish ineffective
assistance of counsel in a parental rights termination case, the appellant must
show by a preponderance of the evidence that her counsel=s representation fell below the standard of prevailing professional
norms and that there is a reasonable probability that, but for counsel=s deficiency, the result of the proceeding would have been
different.  In re M.S., 115 S.W.3d 534,
549-50 (Tex. 2003) (citing Strickland v. Washington, 466 U.S. 668, 687,
104 S. Ct. 2052, 2064 (1984)).  As an appellate court, we must indulge in the
Astrong presumption that counsel=s conduct falls within the wide range of reasonable professional
assistance.@  Id. at 549 (quoting Strickland, 466
U.S. at 689, 104 S. Ct. at 2065).

At the frivolousness hearing,
Beck said she Ascrewed up@ by not filing her request for a jury trial sooner.  When asked how her client was deprived of a
fair trial by having the case heard by the court rather than a jury, Beck
responded,

Because
when you have twelve citizens over there who don=t
come to this courthouse every day, hear evidence every day of criminals, CPS
clients, et cetera, they have a different view and different life experiences
than a sitting judge who is a former prosecutor and has been a sitting judge
for a long time.  They are different.

 








However, Beck also testified that she did not
believe that the trial judge was partial in any way and hoped that he was an
impartial trier of the facts.  Beck
agreed that to her knowledge there was not anything unfair in the process
during the bench trial.  When asked
whether there was anything she could point to about the non-jury procedure and
the trial judge=s presiding
over the trial that she felt deprived Jennifer of a fair trial, Beck responded ANot during the non-jury procedure, but just the denial.@  Beck acknowledged that she
cross-examined witnesses, presented evidence and argument, and participated in
the trial.  The record from the
termination trial indicates that Beck actively participated in extensive
cross-examination of all witnesses, voiced objections on Jennifer=s behalf when appropriate, and called witnesses to support Jennifer=s position.

Based upon the record before
us, we hold that there is not a reasonable probability that, but for counsel=s alleged deficiency in not timely requesting a jury trial, the result
of the proceeding would have been different.     

                  III.  Sufficiency Regarding Grounds For Termination


Jennifer alleges that there
was legally and factually insufficient evidence to support the trial court=s findings that she committed acts that constitute grounds for
termination under section 161.001. 
Jennifer=s brief does
not discuss or address how the evidence is insufficient regarding any of the
four grounds for termination found by the trial court.

This termination proceeding
was brought by the Department alleging fourteen separate grounds for
termination of Jennifer=s parental
rights.  See Tex. Fam. Code Ann. ' 161.001(1).  The trial court
found that there was clear and convincing evidence to support termination on
the following grounds:








$  That Jennifer knowingly placed or knowingly
allowed C.A.L. to remain in conditions or surroundings that endangered the
physical or emotional well-being of C.A.L.;[5]


 

$  That Jennifer engaged in conduct or knowingly
placed C.A.L. with persons who engaged in conduct that endangered the physical
or emotional well-being of C.A.L.;[6]

 

$  That Jennifer failed to support C.A.L. in
accordance with her ability during a period of one year ending within six
months of the date of the filing of the petition;[7]

 

$  That Jennifer has been convicted or has been
placed on community supervision, including deferred adjudication community
supervision, for being criminally responsible for the death or serious injury
of a child under section 22.04 of the penal code.[8]

 








The
clear-and-convincing-evidence standard is an intermediate standard that falls
between the preponderance standard of ordinary civil proceedings and the
reasonable doubt standard of criminal proceedings.  In re G.M., 596 S.W.2d 846, 847 (Tex.
1980); In re K.W., 138 S.W.3d 420, 425 (Tex. App.CFort Worth 2004, pet. denied). 
It is defined as the Ameasure or degree of proof that will produce in the mind of the trier
of fact a firm belief or conviction as to the truth of the allegations sought
to be established.@  Tex.
Fam. Code Ann. ' 101.007.

The higher burden of proof in termination cases elevates the appellate
standard of legal sufficiency review.  J.F.C., 96 S.W.3d at 265.  The traditional no-evidence standard does not
adequately protect the parent's constitutional interests.  Id.  In reviewing the evidence for legal
sufficiency in parental termination cases, we must determine whether the
evidence is such that a factfinder could reasonably form a firm belief or
conviction that the grounds for termination were proven.  Id. at 265-66.  We must review all the evidence in the light
most favorable to the finding and judgment. 
Id. at 266.  This means
that we must assume that the factfinder resolved any disputed facts in favor of
its finding if a reasonable factfinder could have done so.  Id. 
We must also disregard all evidence that a reasonable factfinder could
have disbelieved.  Id.  We must consider, however, undisputed
evidence even if it is contrary to the finding. 
Id.  That is, we must
consider evidence favorable to termination if a reasonable factfinder could,
and disregard contrary evidence unless a reasonable factfinder could not.  The City of Keller v. Wilson, 168
S.W.3d 802, 827 (Tex. 2005).

 








This higher burden of proof
also elevates the appellate standard of factual sufficiency review.  In re C.H., 89 S.W.3d 17, 25 (Tex.
2002).  A[A] finding that must be based on clear and convincing evidence cannot
be viewed on appeal the same as one that may be sustained on a mere preponderance.@  C.H., 89 S.W.3d at
25.  In considering whether the evidence
of termination rises to the level of being clear and convincing, we must
determine whether the evidence is such that a factfinder could reasonably form
a firm belief or conviction that the grounds for termination were proven.  Id. 
Our inquiry here is whether, on the entire record, a factfinder could
reasonably form a firm conviction or belief that the parent violated any
section 161.001(1) and that the termination of the parent=s parental rights would be in the best interest of the child.  Id. at 28.

The evidence at trial showed
that on August 19, 2004, Jennifer pled no contest to the felony offense of
injury to a child, C.A.L., and was placed on deferred adjudication community
supervision for seven years.  The indictment
alleged that the injury was caused by Jennifer grabbing or pulling C.A.L.=s arm on January 23, 2004. 
C.A.L. was eleven months old at the time of the injury which resulted in
her hospitalization on February 3, 2004.[9]  In entering her plea, Jennifer stipulated to
the evidence to support her conviction.

 













At the termination trial,
Jennifer testified that the injury may have occurred when she picked up C.A.L.,
whose arm got caught in the bars of her crib. 
Dawn D. Johnson, M.D., a general pediatrics physician, testified that on
February 3, 2004 she was called by the orthopedic surgeons at the children=s orthopedic clinic in the hospital to examine C.A.L.  Johnson stated that there are only two bones
in a person=s forearm,
and both of C.A.L.=s bones were
broken.  The injury was Atransverse,@ meaning it
was Athrough and through.@  Johnson=s medical report was introduced into evidence without objection; it
stated that an x-ray revealed C.A.L. had Aan angulated, right-sided, mid-shaft fracture of the ulna and radius
without significant new bone formation meaning that it happened within the last
10 days.@  The report further stated that
Jennifer reported that the injury must have occurred while C.A.L. was in her
crib, but the physician concluded that C.A.L. was a victim of non-accidental
trauma, that it is Aextremely
unlikely that these fractures happened while the child was sleeping in the
crib,@ that the Afracture
occurred when the child was alone with the mother on the early morning of
1/24/04,@ and that A[b]one
fractures in children require a significant amount of force which does not
happen in the daily activities of an 11-month-old.@  Johnson testified at the
termination trial that there was a forty-degree angulation in the bone, and
C.A.L.=s arm was disfigured.  In the
operating room, C.A.L. had to be placed under general anesthesia so the doctors
could manipulate the bones in her arm enough to align them.

Considering all of the
evidence, we cannot say that the trial court abused its discretion by concluding
that the evidence is such that a factfinder could reasonably form a firm belief
or conviction that the finding that the allegation under section 161.001(1)(L)
was true and that Jennifer=s challenges to the legal and factual sufficiency of the evidence
regarding this finding are frivolous. 
Therefore, the trial court did not abuse its discretion by concluding
that Jennifer=s legal and
factual sufficiency grounds are frivolous because they do not present a
substantial question for appellate review.[10]


                    IV. 
Sufficiency Regarding Best Interest Of Child 








Jennifer also alleges, again
without elaboration, that there was legally and factually insufficient evidence
to support the trial court=s finding that it is in C.A.L.=s best interest that Jennifer=s parental rights be terminated.[11]  The CPS caseworker testified that based upon
all the facts and circumstances of the case, the Department=s recommendation was that it would be in C.A.L.=s best interest for Jennifer=s rights to be terminated.  This
was also the position of the attorney ad litem for C.A.L. and the CASA guardian
ad litem.

Additionally, the CPS
caseworker informed the court that the Department has a viable adoptive
placement for C.A.L.  Faith[12]
and her husband have been C.A.L.=s foster parents since February 5, 2004.  Faith testified that if Jennifer=s rights were terminated, Faith and her husband were willing to adopt
C.A.L.  The CASA guardian ad litem
informed the court that she had done a home study on Faith and her husband, and
that CASA could endorse a future plan for them to adopt C.A.L.








Considering the factors that
the trier of fact in a termination case may use in determining the best
interest of the child,[13]
and reviewing the entire record from the termination trial, we are unable to
say that the trial court abused its discretion by concluding that the evidence
is such that a factfinder could reasonably form a firm belief or conviction
that it is in C.A.L.=s best
interest that Jennifer=s parental
rights be terminated and Jennifer=s challenges to the legal and factual sufficiency of the evidence
regarding this finding are frivolous. 
Therefore, the trial court did not abuse its discretion by concluding
that Jennifer=s legal and
factual sufficiency grounds regarding the best interest finding are frivolous
because they do not present a substantial question for appellate review.

Having addressed all four
subparts in Jennifer's first issue, we overrule her first issue.

Mary's First
Issue

In her remaining issue, Mary
contends the trial court erred in ruling that her appeal is frivolous.  Mary asserts the trial court abused its
discretion in striking her petition in intervention; therefore, she claims that
she has presented a substantial question for appellate review.

Rule 60 of the rules of civil
procedure provides,

Any party may intervene by filing a pleading,
subject to being stricken out by the court for sufficient cause on the motion
of any party. 

 








Tex. R. Civ. P. 60.  Under this rule, a person
or entity has the right to intervene if the intervenor could have brought the
same action, or any part thereof, in her own name, or, if the action had been
brought against her, she would be able to defeat recovery, or some part
thereof.  Guaranty Fed. Sav. Bank v.
Horseshoe Operating Co., 793 S.W.2d 652, 657 (Tex. 1990).  Additionally, the version of section 102.004
of the family code in effect at the time Mary filed her petition in
intervention provided that a grandparent may file an original suit requesting
managing conservatorship if there is satisfactory proof to the court that the
order requested is necessary because the child=s present environment presents a serious question concerning the child=s physical health or welfare[14]  The interest asserted by the intervenor may
be legal or equitable.  Guaranty Fed.
Sav. Bank, 793 S.W.2d at 657. 
Although the trial court has broad discretion in determining whether an
intervention should be stricken, it is an abuse of discretion to strike a plea
in intervention if the intervenor meets the above test, the intervention will
not complicate the case by an excessive multiplication of the issues, and the
intervention is almost essential to effectively protect the intervenor's
interest.  Id.








Mary filed her petition in
intervention on June 7, 2005, which was the original date scheduled by the
court for the final hearing on the Department=s termination petition.  Mary
sought to be appointed sole managing conservator of C.A.L.  The mandatory dismissal date for the Department=s termination petition was August 6, 2005.  On July 1, 2005, the trial court held a
hearing on the Department=s motion to
strike Mary=s petition
in intervention.  At that hearing, Mary=s attorney argued that the petition in intervention was filed as soon
as practicably possible after the Department=s goal changed from reunification to termination.  However, C.A.L.=s attorney ad litem and the Department=s attorney stated that Mary was aware that this litigation existed
since the Department filed its termination petition fourteen months prior to
filing her petition in intervention.

The CPS caseworker, Michelle
Mense, testified that in March 2004 she spoke with Mary, who voiced an interest
in a home study or becoming involved in the case.  However, Mary missed the appointment
scheduled with Mense for the following week, and Mense never heard from Mary
again; therefore, the home study was never pursued.








In February or March 2004,
Mary moved to the state of Florida where she continued to reside at the time of
trial.  She testified that she was under
the impression until May 2005 that C.A.L. was going to be returned to Jennifer
and that is why she did not file her petition for intervention sooner.  She stated that after completing her
paperwork regarding the home study in March 2004, she contacted Kenneth
Coleman, the person at the Department who was handling this matter, and he
never returned her calls.  Mary stated
that she never had an appointment to meet with the CPS caseworker.  Mary admitted that until June 2005 she never
made any attempt to contact C.A.L.=s attorney ad litem, the District Attorney=s office, the CPS caseworker, or the CASA guardian ad litem. She
acknowledged that she hasn=t attended any of the five permanency planning meetings, and the last
time she saw C.A.L. was in February 2004, seventeen months prior to the hearing
on her petition in intervention.[15]  Mary further admitted that until she filed
her petition in intervention, she never requested that CPS schedule a visit
with C.A.L.








At the July 1 hearing, the
Department argued that because the case had to be tried by August 8 or the
court would be required to dismiss the termination proceeding,[16]
the Department had inadequate time and opportunity to investigate the
appropriateness of Mary to be C.A.L.=s sole managing conservator. 
Had Mary not missed her appointment with the CPS caseworker in March
2004, and had Mary maintained any sort of contact with the Department or the
attorney ad litem or guardian ad litem, the Department would  have initiated proceedings to review any
request made by Mary.  However, because
the case was set for trial on July 8 and the mandatory dismissal date was August
6, there was no time for the Department to review the relief requested in Mary=s petition in intervention. 
Mense testified that if a party lives out of state, the minimum time
necessary to complete the proper investigation is six months.

Having considered the entire
record, we are unable say that the trial court abused its discretion in
striking Mary=s petition
in intervention.  Therefore, the trial
court did not abuse its discretion by concluding that Mary=s appeal was frivolous because it does not present a substantial
question for appellate review.  We
overrule Mary=s first
issue.

                                           CONCLUSION

Having overruled all of
Jennifer's and Mary's issues, we agree with the trial court that any appeal
would not present a substantial question for appellate review.  See Tex.
Fam. Code Ann. ' 263.405(d);
Tex. Civ. Prac. & Rem. Code Ann.
' 13.003(b).  Accordingly, we
hold that the trial court did not abuse its discretion by concluding that
Jennifer=s and Mary=s appeals
are frivolous.  We affirm the trial
court's determination that the appeals are frivolous.

 

PER CURIAM

 

PANEL F: 
HOLMAN, DAUPHINOT, and GARDNER, JJ.

DELIVERED: 
February 15, 2007

 











[1]See Tex.
R. App. P. 47.4.





[2]The termination judgment was signed
on July 26, 2005.  Appellants filed their
separate notices of appeal on August 8, 2006. 
The current version of this family code section became effective for
appeals filed on or after September 1, 2005. 
Act of May 22, 2001, 77th Leg., R.S., ch. 1090, ' 9,
2001 Tex. Gen. Laws 2395, 2396 (amended 2005) (current version at Tex. Fam. Code Ann. '
263.405 (Vernon Supp. 2006)).  Therefore, the former version of family
code section 263.405 applies.  See id.  All references in this opinion to section
263.405 refer to the version that was in effect at the time Appellants filed
their notices of appeal.





[3]Although some of the issues raised
by Appellants were not presented to the trial court in their statements of the
points on which each party intended to appeal, under the version of section
263.405 that applies to this appeal, Appellants are not limited to the points
listed in their statements of points.  See
In re S.P., 168 S.W.3d 197, 201-02 (Tex. App.CDallas 2005, no pet.) (op. nunc pro
tunc); In re J.B.W., 99 S.W.3d 218, 221 (Tex. App.CFort Worth 2003, pet. denied).





[4]The final volume of the reporter=s record was filed December 27,
2006.  





[5]Tex. Fam. Code Ann. '
161.001(1)(D).





[6]Id. '
161.001(1)(E).





[7]Id. '
161.001(1)(F).





[8]Id. '
161.001(1)(L).





[9]C.A.L. was born on February 27,
2003.





[10]Because we hold that the
termination of Jennifer=s parental rights can be upheld
under section 161.001(1)(L), we need not address whether the evidence could be
sufficient to support termination under any of the other three grounds found by
the trial court.  See In re A.J.L.,
136 S.W.3d 293, 305 (Tex. App.CFort Worth 2004, no pet.). 





[11]Tex. Fam. Code Ann. '
161.001(2).





[12]For purposes of confidentiality,
the trial court permitted the witness to use only her first name during the
trial.





[13]See Holley v. Adams, 544
S.W.2d 367, 371‑72 (Tex. 1976). 





[14]Act
of April 6, 1995, 74th Leg., R.S., ch. 20, ' 1, 1995 Tex. Gen. Laws, 113,
125 (amended 2005) (current version at Tex.
Fam. Code Ann. '
102.004(a) (Vernon Supp. 2006)).





[15]C.A.L. has been in foster care
since February 3, 2004.





[16]See Tex.
Fam. Code Ann. ' 263.401 (Vernon Supp. 2006).