NO. 07-07-0247-CR


NO. 07-07-0248-CR


NO. 07-07-0249-CR


NO. 07-07-0250-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL A



JULY 6, 2007



______________________________




BETTY JO LEONARD, APPELLANT



V.



THE STATE OF TEXAS, APPELLEE




_________________________________



FROM THE 320TH DISTRICT COURT OF POTTER COUNTY;



NOS. 54,855-D; 55,454-D; 55,498-D; 55,604-D; HONORABLE DON EMERSON, JUDGE


_______________________________



Before CAMPBELL and HANCOCK and PIRTLE, JJ.

MEMORANDUM OPINION


 Pending before this Court are Appellant Betty Joe Leonard's motions to dismiss the
above referenced appeals. As required by Rule 42.2(a) of the Texas Rules of Appellate
Procedure, the motions are signed by Appellant and her attorney. No decisions of this
Court having been delivered, the motions are granted and the appeals are dismissed. No
motions for rehearing will be entertained and our mandates will issue forthwith.

 Accordingly, the appeals are dismissed.

 Patrick A. Pirtle

 Justice




Do not publish.



:DontUseIndentAsNumberingTabStop/>
 
 
 
 
 
 
 
 MicrosoftInternetExplorer4
 
 
 
 
 
 
 
 
 
 
 
 
 









NO. 07-10-0261-CV

 

IN THE
COURT OF APPEALS

 

FOR THE
SEVENTH DISTRICT OF TEXAS

 

AT
AMARILLO

 

PANEL B

 



JANUARY
7, 2011

 



 

In the Interest of J.T.B., a Child 

_____________________________

 

FROM THE COUNTY COURT AT LAW NO. 2 OF
RANDALL COUNTY;

 

NO. 6867-L2; HONORABLE RONALD WALKER
JR., PRESIDING

 



 

Memorandum
Opinion

 



 

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

            Sherri Dawn
Drake appeals the termination of her parental rights to her two-year-old
daughter J.T.B. by challenging the legal and factual sufficiency of the
evidence to support the statutory grounds found by the court, as well as the
finding that termination is in the best interest of the child.  She also contends the trial court failed to terminate
her rights within the statutorily mandated period and that her counsel was
ineffective for failing to object to the default.  We affirm the order.  

            Standard of Review

            The standard by which we review the
sufficiency of the evidence in a termination case is discussed in In re J.F.C., 96 S.W.3d 256, 266-67
(Tex. 2002) and In re C.H., 89 S.W.3d
17, 25 (Tex. 2002) to which we refer the parties.  Moreover, we need only find the evidence
sufficient to support termination under one statutory ground and that
termination is in the best interest of the child to affirm the trial courts
order.  In re K.C.B., 280 S.W.3d 888, 894-95 (Tex. App.Amarillo 2009, pet.
denied).  

            Statutory Grounds

            The trial
court found three statutory grounds upon which to terminate the parental rights
of Sherri.  They include grounds that
Sherri 1) knowingly placed or knowingly allowed the child to remain in
conditions or surroundings which endangered the physical or emotional
well-being of the child, 2) engaged in conduct or knowingly placed the child
with persons who engaged in conduct which endangered the physical or emotional
well-being of the child, and 3) failed to comply with the provisions of a court
order that specifically established the actions necessary for her to obtain the
return of the child who had been in the managing conservatorship of the
Department of Family and Protective Services (the Department) for not less than
nine months as a result of removal from the parent for the abuse or neglect of
the child.  

            In support
of these findings, there was evidence in the record of the following:  1) Sherri, who was eighteen at the time she
gave birth, had used drugs and smoked during her pregnancy, even though Sherri
acknowledged that she knew smoking could be detrimental to her child and cause
a premature birth, 2) the child was born prematurely and stayed in the hospital
for the first three months of her life, 3) the child weighed one pound, six
ounces at birth and had significant health problems including cerebral palsy,
acid reflux, sleep apnea, chronic lung disease, undeveloped vision, and a brain
bleed, 4) Sherri and her mother, with whom Sherri lived at the time of the
commencement of this proceeding, were repeatedly told by medical personnel,
counselors, and Department workers that the child could not be around any
second or third-hand smoke but neither one of them had quit smoking at the time
of trial,[1]
5) during the time that Sherri had custody of the child, she was brought in with
brain and retinal hemorrhages which the treating doctors believed was caused by
intentional blunt force trauma to the head,[2]
6) the child, who only weighed sixteen pounds at the time of trial, lost weight
during the time that Sherri had extended unsupervised visitation with the child
and her pediatrician recommended that such visits cease,[3]
7) the child needs breathing treatments every three hours, attends speech
therapy, occupational therapy, and Head Start training on language and motor
skills, and has numerous doctor appointments, 8) Sherri only attended six of
the twenty-four doctors appointments despite the requirements of her service
plan and excused her absences by alleging that she could not obtain the date of
the appointments, 9) Sherri attended only six of thirteen visitations arranged
by CASA, 10) both Department workers and counselors testified that Sherri did
not seem to recognize the seriousness of her childs medical problems, 11) Sherri
would show up late or fail to come at the time the hospital had arranged for
her to give medications to her child, 12) Sherri and her mother were on
probation for hindering the apprehension of a fugitive (the father of the
child) after he escaped from jail and despite his being considered by law
enforcement authorities to be dangerous due to his criminal record, 13) Sherri
had a history of self-mutilation and overdosing on medication, 14) a
psychological evaluation revealed that Sherri did not show appropriate
sensitivity for the medically fragile circumstances of her child, was
dismissive of any weaknesses in her parenting skills, and lacked good social
adjustment which would put her child at risk,  15) a counselor stated that while Sherri
attended eight required sessions with her, Sherri did not see the need for
additional therapy, despite it being free, 16) from a bonding assessment, it
was determined that Sherri scored below the average, while a parent of a child
needing continuing medical care should score better than average, 17) Sherri displayed
fatigue during visitations with the child, sometimes failed to interact with
the child, left the child to play by herself, and had to be reminded to change
the childs diaper, 18) the child fell during a visit with her mother because
Sherri was using her cell phone, 19) in March 2010, Sherri had a cabinet full
of empty liquor bottles in an apartment that she was vacating, 20) on April 22,
2010, two packs of cigarettes and an open bottle of alcohol were found in the
back seat of Sherris car, and 21) Sherri lacked stable living arrangements, worked
for minimum wages, and lacked any clear plan for her future.

Other evidence indicated that Sherri had
held a job during most of this proceeding, received a drivers license,
completed most of her prescribed services, was not then in danger of having her
probation revoked, and was more attentive to her child before the Department decided
to seek termination of the parent/child relationship than after.  Sherris current supervisor also testified
favorably for her.

           Given the childs special needs, the
likelihood that she will need medical care for the rest of her life, the
seriously detrimental effect that cigarette smoke had on the child, the
unwillingness or inability of Sherri and her mother to stop smoking, the
evidence that Sherri missed appointments made to provide for the medical needs
of the child, and the instability of her home life, there was sufficient evidence
for a factfinder to form a firm belief or conviction that Sherri had knowingly
allowed the child to remain in conditions or surroundings which endangered the
physical well-being of the child and engaged in conduct or knowingly placed the
child with persons who engaged in conduct endangering the physical well-being
of the child.  See In re W.E.C., 110 S.W.3d 231, 238 (Tex. App.Fort Worth 2003,
no pet.) (noting that the childs respiratory problems requiring daily
breathing treatments, the mothers failure to stop smoking and to prevent others
from smoking around the child, and the presence of missed speech and cognitive
therapy appointments for the child were factors supporting termination). Having
so found, we need not address whether there existed evidence sufficiently
supporting the third statutory ground upon which termination was founded.

            Best Interest of the Child

            Next, when determining the best
interest of the child, we consider what have become known as the Holley factors.  They include, among other things, 1) the
desires of the child, 2) the emotional and physical needs of the child now and
in the future, 3) the emotional and physical danger to the child now and in the
future, 4) the parental abilities of the individuals seeking custody, 5) the
programs available to assist those individuals to promote the best interest of
the child, 6) the plans for the child by those individuals or by the agency
seeking custody, 7) the stability of the home, 8) the acts or omissions of the
parent indicating that the existing parent/child relationship is not a proper
one, and 9) any excuse for the acts or omissions of the parent.  In re
P.E.W., 105 S.W.3d 771, 779-80 (Tex. App.Amarillo 2003, no pet.).  It is not necessary that each factor favor
termination, id. at 780, and the list
is not exclusive.  In re C.J.F., 134 S.W.3d 343, 354 (Tex. App.Amarillo 2003, pet.
denied).  Furthermore, the same evidence illustrating
the presence of statutory grounds for termination may also be probative of the
childs best interest.  In re C.H., 89 S.W.3d at 28.  

            In addition
to the evidence listed above, there was evidence that 1) the childs foster
mother diligently took the child to her medical and therapy appointments, 2)
the child made significant progress in her therapy, 3) the foster family accepted
the suggestions of the childs therapists, 4)  the childs medical condition was improving although
she remained on an intensive medical regimen, 5) since being placed in a foster
home, the child was active, 6) the child was considered adoptable despite her
health problems, and 7) the foster family was assessing the possibility of
adopting her.[4]
 Considering all of the evidence, there
was clear and convincing evidence to support the decision that termination was
in the childs best interest.  See In re D.L.N., 958 S.W.2d 934, 941
(Tex. App.Waco 1997, pet. denied), overruled
in part on other grounds by In re J.F.C., 96 S.W.3d 256 (Tex. 2002)
(stating that it may be inferred that past conduct endangering the well-being
of a child may recur in the future).  Consequently,
we overrule appellants claims of legal and factual insufficiency.  

            Statutory Deadline

            Next, under circumstances like those
at bar, an action to terminate parental rights must be dismissed if the trial
is not commenced on the first Monday after the first anniversary of the date
the court rendered a temporary order appointing the Department temporary
managing conservator.  Tex. Fam. Code Ann. §263.401(a) (Vernon
2008).  This is not so if the trial court
finds that extraordinary circumstances necessitate the child remaining in the
temporary managing conservatorship of the Department and that continuing the
appointment of the Department as temporary managing conservator is in the best
interest of the child.  Id. §263.401(b).  Should that happen, then trial may be delayed
for an additional 180 days.  All conceded
that the foregoing deadlines were not met here. 
However, Sherri did not raise the default until after the completion of
the trial.  Furthermore, the matter was
raised via a motion for new trial.  

            According to
statute, a party who fails to timely move to dismiss the suit waives the right
to object.  Id. §263.402(b). 
Additionally, a motion to dismiss is timely if made before trial on the
merits commences.  Id.; see also In re J.B.W., 99
S.W.3d 218, 222 (Tex. App.Fort Worth 2003, pet. denied).  Having waited until the end of her trial to
raise the courts failure to abide by the statutory timeline, Sherris motion
was untimely; therefore, she waived her complaint.    

            Nevertheless,
she also contends that because her attorney failed to timely raise the default,
she received ineffective counsel.  One
claiming that counsel was ineffective 
must show both that his performance was deficient and that the
deficiency was prejudicial.  In re J.P.B., 180 S.W.3d 570, 574 (Tex.
2005).  Furthermore, prejudice is shown
when there exists a reasonable probability that, but for counsels error, the
result of the proceeding would have been different.  In re
D.B., 153 S.W.3d 575, 577 (Tex. App.Amarillo 2004, no pet.).  It is also true that claims of ineffective
assistance must be firmly founded in the record.  In re
K.K., 180 S.W.3d 681, 685 (Tex. App.Waco 2005, no pet.).  This is important since the failure to
request a dismissal is not ineffective assistance per se but may be the result of trial strategy.  See In
re K.K., No. 10-04-00303-CV, 2006 Tex. App. Lexis 1819, at *11-12 (Tex. App.Waco March 28, 2006, no
pet.).  For instance, counsel may have
believed that the chances of success at trial were high, as was the situation
in K.K. 
 Id.  

            Here,
nothing of record illustrated why counsel did not move to dismiss the action
before trial commenced.  Instead, Sherri asserted
that appellate counsel was unable to provide further evidence to demonstrate
whether counsel could have had a trial strategy for failing to request a
dismissal because of the trial courts denial of a timely filed motion for new
trial.   Yet, she does not explain why the
reasons, if any, underlying her trial counsels action could not have been
obtained and included, via affidavit, in her motion for new trial.  Nor does she attempt to illustrate that the
State would not have sought termination through a second action or that such an
action would have met with defeat.  The
absence of evidence touching upon the latter were factors considered by the K.K. panel when rejecting the claim of
ineffective counsel there raised.  See id. at *12. 

            In sum, Sherri
failed to carry her burden of proof.  So,
we overrule her claim of ineffective counsel. 
The order of termination is affirmed.

 

                                                                                    Brian
Quinn 

                                                                                    Chief
Justice 

              











[1]Sherri
testified at trial that she had not smoked in the six days prior to trial.  





[2]Sherri
claimed she had left the child in the care of her sister while she went to a
party.  Neither Sherri nor her mother
believed that anyone in the family had hurt the child, and there was no
evidence to prove how the injury occurred.  






[3]When
the child is exposed to smoke, her lungs have to work harder to allow her to
breathe.  





[4]The
foster family has concerns about adopting because Sherri was able to pull up a
picture of their house on her cell phone and asked the foster mother if she
felt it was dangerous to be a foster parent knowing that she could be so easily
looked up.