NO. 07-10-0261-CV

 IN THE COURT OF APPEALS

 FOR THE SEVENTH DISTRICT OF TEXAS

 AT AMARILLO

 PANEL B

 JANUARY 7, 2011

 In the Interest of J.T.B., a Child
 _____________________________

 FROM THE COUNTY COURT AT LAW NO. 2 OF RANDALL COUNTY;

 NO. 6867-L2; HONORABLE RONALD WALKER JR., PRESIDING

 Memorandum Opinion

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.
 Sherri Dawn Drake appeals the termination of her parental rights
to her two-year-old daughter J.T.B. by challenging the legal and
factual sufficiency of the evidence to support the statutory grounds
found by the court, as well as the finding that termination is in the
best interest of the child. She also contends the trial court failed
to terminate her rights within the statutorily mandated period and
that her counsel was ineffective for failing to object to the default.
 We affirm the order.
 Standard of Review
 The standard by which we review the sufficiency of the evidence
in a termination case is discussed in In re J.F.C., 96 S.W.3d 256, 266-
67 (Tex. 2002) and In re C.H., 89 S.W.3d 17, 25 (Tex. 2002) to which
we refer the parties. Moreover, we need only find the evidence
sufficient to support termination under one statutory ground and that
termination is in the best interest of the child to affirm the trial
court’s order. In re K.C.B., 280 S.W.3d 888, 894-95 (Tex.
App.–Amarillo 2009, pet. denied).
 Statutory Grounds
 The trial court found three statutory grounds upon which to
terminate the parental rights of Sherri. They include grounds that
Sherri 1) knowingly placed or knowingly allowed the child to remain in
conditions or surroundings which endangered the physical or emotional
well-being of the child, 2) engaged in conduct or knowingly placed the
child with persons who engaged in conduct which endangered the
physical or emotional well-being of the child, and 3) failed to comply
with the provisions of a court order that specifically established the
actions necessary for her to obtain the return of the child who had
been in the managing conservatorship of the Department of Family and
Protective Services (the Department) for not less than nine months as
a result of removal from the parent for the abuse or neglect of the
child.
 In support of these findings, there was evidence in the record
of the following: 1) Sherri, who was eighteen at the time she gave
birth, had used drugs and smoked during her pregnancy, even though
Sherri acknowledged that she knew smoking could be detrimental to her
child and cause a premature birth, 2) the child was born prematurely
and stayed in the hospital for the first three months of her life, 3)
the child weighed one pound, six ounces at birth and had significant
health problems including cerebral palsy, acid reflux, sleep apnea,
chronic lung disease, undeveloped vision, and a brain bleed, 4) Sherri
and her mother, with whom Sherri lived at the time of the commencement
of this proceeding, were repeatedly told by medical personnel,
counselors, and Department workers that the child could not be around
any second or third-hand smoke but neither one of them had quit
smoking at the time of trial,[1] 5) during the time that Sherri had
custody of the child, she was brought in with brain and retinal
hemorrhages which the treating doctors believed was caused by
intentional blunt force trauma to the head,[2] 6) the child, who only
weighed sixteen pounds at the time of trial, lost weight during the
time that Sherri had extended unsupervised visitation with the child
and her pediatrician recommended that such visits cease,[3] 7) the
child needs breathing treatments every three hours, attends speech
therapy, occupational therapy, and Head Start training on language and
motor skills, and has numerous doctor appointments, 8) Sherri only
attended six of the twenty-four doctor’s appointments despite the
requirements of her service plan and excused her absences by alleging
that she could not obtain the date of the appointments, 9) Sherri
attended only six of thirteen visitations arranged by CASA, 10) both
Department workers and counselors testified that Sherri did not seem
to recognize the seriousness of her child’s medical problems, 11)
Sherri would show up late or fail to come at the time the hospital had
arranged for her to give medications to her child, 12) Sherri and her
mother were on probation for hindering the apprehension of a fugitive
(the father of the child) after he escaped from jail and despite his
being considered by law enforcement authorities to be dangerous due to
his criminal record, 13) Sherri had a history of self-mutilation and
overdosing on medication, 14) a psychological evaluation revealed that
Sherri did not show appropriate sensitivity for the “medically fragile
circumstances” of her child, was dismissive of any weaknesses in her
parenting skills, and lacked good social adjustment which would put
her child at risk, 15) a counselor stated that while Sherri attended
eight required sessions with her, Sherri did not see the need for
additional therapy, despite it being free, 16) from a bonding
assessment, it was determined that Sherri scored below the average,
while a parent of a child needing continuing medical care should score
better than average, 17) Sherri displayed fatigue during visitations
with the child, sometimes failed to interact with the child, left the
child to play by herself, and had to be reminded to change the child’s
diaper, 18) the child fell during a visit with her mother because
Sherri was using her cell phone, 19) in March 2010, Sherri had a
cabinet full of empty liquor bottles in an apartment that she was
vacating, 20) on April 22, 2010, two packs of cigarettes and an open
bottle of alcohol were found in the back seat of Sherri’s car, and 21)
Sherri lacked stable living arrangements, worked for minimum wages,
and lacked any clear plan for her future.
 Other evidence indicated that Sherri had held a job during most
of this proceeding, received a driver’s license, completed most of her
prescribed services, was not then in danger of having her probation
revoked, and was more attentive to her child before the Department
decided to seek termination of the parent/child relationship than
after. Sherri’s current supervisor also testified favorably for her.
 Given the child’s special needs, the likelihood that she
will need medical care for the rest of her life, the seriously
detrimental effect that cigarette smoke had on the child, the
unwillingness or inability of Sherri and her mother to stop smoking,
the evidence that Sherri missed appointments made to provide for the
medical needs of the child, and the instability of her home life,
there was sufficient evidence for a factfinder to form a firm belief
or conviction that Sherri had knowingly allowed the child to remain in
conditions or surroundings which endangered the physical well-being of
the child and engaged in conduct or knowingly placed the child with
persons who engaged in conduct endangering the physical well-being of
the child. See In re W.E.C., 110 S.W.3d 231, 238 (Tex. App.–Fort
Worth 2003, no pet.) (noting that the child’s respiratory problems
requiring daily breathing treatments, the mother’s failure to stop
smoking and to prevent others from smoking around the child, and the
presence of missed speech and cognitive therapy appointments for the
child were factors supporting termination). Having so found, we need
not address whether there existed evidence sufficiently supporting the
third statutory ground upon which termination was founded.
 Best Interest of the Child
 Next, when determining the best interest of the child, we
consider what have become known as the Holley factors. They include,
among other things, 1) the desires of the child, 2) the emotional and
physical needs of the child now and in the future, 3) the emotional
and physical danger to the child now and in the future, 4) the
parental abilities of the individuals seeking custody, 5) the programs
available to assist those individuals to promote the best interest of
the child, 6) the plans for the child by those individuals or by the
agency seeking custody, 7) the stability of the home, 8) the acts or
omissions of the parent indicating that the existing parent/child
relationship is not a proper one, and 9) any excuse for the acts or
omissions of the parent. In re P.E.W., 105 S.W.3d 771, 779-80 (Tex.
App.–Amarillo 2003, no pet.). It is not necessary that each factor
favor termination, id. at 780, and the list is not exclusive. In re
C.J.F., 134 S.W.3d 343, 354 (Tex. App.–Amarillo 2003, pet. denied).
Furthermore, the same evidence illustrating the presence of statutory
grounds for termination may also be probative of the child’s best
interest. In re C.H., 89 S.W.3d at 28.
 In addition to the evidence listed above, there was evidence
that 1) the child’s foster mother diligently took the child to her
medical and therapy appointments, 2) the child made significant
progress in her therapy, 3) the foster family accepted the suggestions
of the child’s therapists, 4) the child’s medical condition was
improving although she remained on an intensive medical regimen, 5)
since being placed in a foster home, the child was active, 6) the
child was considered adoptable despite her health problems, and 7) the
foster family was assessing the possibility of adopting her.[4]
Considering all of the evidence, there was clear and convincing
evidence to support the decision that termination was in the child’s
best interest. See In re D.L.N., 958 S.W.2d 934, 941 (Tex. App.–Waco
1997, pet. denied), overruled in part on other grounds by In re
J.F.C., 96 S.W.3d 256 (Tex. 2002) (stating that it may be inferred
that past conduct endangering the well-being of a child may recur in
the future). Consequently, we overrule appellant’s claims of legal
and factual insufficiency.
 Statutory Deadline
 Next, under circumstances like those at bar, an action to
terminate parental rights must be dismissed if the trial is not
commenced on the first Monday after the first anniversary of the date
the court rendered a temporary order appointing the Department
temporary managing conservator. Tex. Fam. Code Ann. §263.401(a)
(Vernon 2008). This is not so if the trial court finds that
extraordinary circumstances necessitate the child remaining in the
temporary managing conservatorship of the Department and that
continuing the appointment of the Department as temporary managing
conservator is in the best interest of the child. Id. §263.401(b).
Should that happen, then trial may be delayed for an additional 180
days. All conceded that the foregoing deadlines were not met here.
However, Sherri did not raise the default until after the completion
of the trial. Furthermore, the matter was raised via a motion for new
trial.
 According to statute, a party who fails to timely move to
dismiss the suit waives the right to object. Id. §263.402(b).
Additionally, a motion to dismiss is timely if made before trial on
the merits commences. Id.; see also In re J.B.W., 99 S.W.3d 218, 222
(Tex. App.–Fort Worth 2003, pet. denied). Having waited until the end
of her trial to raise the court’s failure to abide by the statutory
timeline, Sherri’s motion was untimely; therefore, she waived her
complaint.
 Nevertheless, she also contends that because her attorney failed
to timely raise the default, she received ineffective counsel. One
claiming that counsel was ineffective must show both that his
performance was deficient and that the deficiency was prejudicial. In
re J.P.B., 180 S.W.3d 570, 574 (Tex. 2005). Furthermore, prejudice is
shown when there exists a reasonable probability that, but for
counsel’s error, the result of the proceeding would have been
different. In re D.B., 153 S.W.3d 575, 577 (Tex. App.–Amarillo 2004,
no pet.). It is also true that claims of ineffective assistance must
be firmly founded in the record. In re K.K., 180 S.W.3d 681, 685
(Tex. App.–Waco 2005, no pet.). This is important since the failure
to request a dismissal is not ineffective assistance per se but may be
the result of trial strategy. See In re K.K., No. 10-04-00303-CV,
2006 Tex. App. Lexis 1819, at *11-12 (Tex. App.–Waco March 28, 2006,
no pet.). For instance, counsel may have believed that the chances of
success at trial were high, as was the situation in K.K. Id.
 Here, nothing of record illustrated why counsel did not move to
dismiss the action before trial commenced. Instead, Sherri asserted
that “appellate counsel was unable to provide further evidence to
demonstrate whether counsel could have had a trial strategy for
failing to request a dismissal because of the trial court’s denial of
a timely filed motion for new trial.” Yet, she does not explain why
the reasons, if any, underlying her trial counsel’s action could not
have been obtained and included, via affidavit, in her motion for new
trial. Nor does she attempt to illustrate that the State would not
have sought termination through a second action or that such an action
would have met with defeat. The absence of evidence touching upon the
latter were factors considered by the K.K. panel when rejecting the
claim of ineffective counsel there raised. See id. at *12.
 In sum, Sherri failed to carry her burden of proof. So, we
overrule her claim of ineffective counsel. The order of termination
is affirmed.

 Brian Quinn
 Chief Justice

-----------------------
 [1]Sherri testified at trial that she had not smoked in the six
days prior to trial.

 [2]Sherri claimed she had left the child in the care of her
sister while she went to a party. Neither Sherri nor her mother
believed that anyone in the family had hurt the child, and there was
no evidence to prove how the injury occurred.

 [3]When the child is exposed to smoke, her lungs have to work
harder to allow her to breathe.

 [4]The foster family has concerns about adopting because Sherri
was able to pull up a picture of their house on her cell phone and
asked the foster mother “if she felt it was dangerous to be a foster
parent knowing that she could be so easily looked up.”