NO. 07-10-0261-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

JANUARY 7, 2011

_____

In the Interest of J.T.B., a Child
_____

FROM THE COUNTY COURT AT LAW NO. 2 OF RANDALL COUNTY;

NO. 6867-L2; HONORABLE RONALD WALKER JR., PRESIDING
_____

***Memorandum Opinion***
_____

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

Sherri Dawn Drake appeals the termination of her parental rights to her two-year-old daughter J.T.B. by challenging the legal and factual sufficiency of the evidence to support the statutory grounds found by the court, as well as the finding that termination is in the best interest of the child. She also contends the trial court failed to terminate her rights within the statutorily mandated period and that her counsel was ineffective for failing to object to the default. We affirm the order.

*Standard of Review*

The standard by which we review the sufficiency of the evidence in a termination case is discussed in *In re J.F.C.,* 96 S.W.3d 256, 266-67 (Tex. 2002) and *In re C.H.,* 89 S.W.3d 17, 25 (Tex. 2002) to which we refer the parties. Moreover, we need only find

the evidence sufficient to support termination under one statutory ground and that termination is in the best interest of the child to affirm the trial court's order. *In re K.C.B.,* 280 S.W.3d 888, 894-95 (Tex. App.–Amarillo 2009, pet. denied).

*Statutory Grounds*

The trial court found three statutory grounds upon which to terminate the parental rights of Sherri. They include grounds that Sherri 1) knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endangered the physical or emotional well-being of the child, 2) engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangered the physical or emotional well-being of the child, and 3) failed to comply with the provisions of a court order that specifically established the actions necessary for her to obtain the return of the child who had been in the managing conservatorship of the Department of Family and Protective Services (the Department) for not less than nine months as a result of removal from the parent for the abuse or neglect of the child.

In support of these findings, there was evidence in the record of the following: 1) Sherri, who was eighteen at the time she gave birth, had used drugs and smoked during her pregnancy, even though Sherri acknowledged that she knew smoking could be detrimental to her child and cause a premature birth, 2) the child was born prematurely and stayed in the hospital for the first three months of her life, 3) the child weighed one pound, six ounces at birth and had significant health problems including cerebral palsy, acid reflux, sleep apnea, chronic lung disease, undeveloped vision, and a brain bleed, 4) Sherri and her mother, with whom Sherri lived at the time of the commencement of this proceeding, were repeatedly told by medical personnel, counselors, and

Department workers that the child could not be around any second or third-hand smoke but neither one of them had quit smoking at the time of trial,[1] 5) during the time that Sherri had custody of the child, she was brought in with brain and retinal hemorrhages which the treating doctors believed was caused by intentional blunt force trauma to the head,[2] 6) the child, who only weighed sixteen pounds at the time of trial, lost weight during the time that Sherri had extended unsupervised visitation with the child and her pediatrician recommended that such visits cease,[3] 7) the child needs breathing treatments every three hours, attends speech therapy, occupational therapy, and Head Start training on language and motor skills, and has numerous doctor appointments, 8) Sherri only attended six of the twenty-four doctor's appointments despite the requirements of her service plan and excused her absences by alleging that she could not obtain the date of the appointments, 9) Sherri attended only six of thirteen visitations arranged by CASA, 10) both Department workers and counselors testified that Sherri did not seem to recognize the seriousness of her child's medical problems, 11) Sherri would show up late or fail to come at the time the hospital had arranged for her to give medications to her child, 12) Sherri and her mother were on probation for hindering the apprehension of a fugitive (the father of the child) after he escaped from jail and despite his being considered by law enforcement authorities to be dangerous due to his criminal record, 13) Sherri had a history of self-mutilation and overdosing on medication, 14) a

---

[1]Sherri testified at trial that she had not smoked in the six days prior to trial.

[2]Sherri claimed she had left the child in the care of her sister while she went to a party. Neither Sherri nor her mother believed that anyone in the family had hurt the child, and there was no evidence to prove how the injury occurred.

[3]When the child is exposed to smoke, her lungs have to work harder to allow her to breathe.

3

psychological evaluation revealed that Sherri did not show appropriate sensitivity for the "medically fragile circumstances" of her child, was dismissive of any weaknesses in her parenting skills, and lacked good social adjustment which would put her child at risk, 15) a counselor stated that while Sherri attended eight required sessions with her, Sherri did not see the need for additional therapy, despite it being free, 16) from a bonding assessment, it was determined that Sherri scored below the average, while a parent of a child needing continuing medical care should score better than average, 17) Sherri displayed fatigue during visitations with the child, sometimes failed to interact with the child, left the child to play by herself, and had to be reminded to change the child's diaper, 18) the child fell during a visit with her mother because Sherri was using her cell phone, 19) in March 2010, Sherri had a cabinet full of empty liquor bottles in an apartment that she was vacating, 20) on April 22, 2010, two packs of cigarettes and an open bottle of alcohol were found in the back seat of Sherri's car, and 21) Sherri lacked stable living arrangements, worked for minimum wages, and lacked any clear plan for her future.

Other evidence indicated that Sherri had held a job during most of this proceeding, received a driver's license, completed most of her prescribed services, was not then in danger of having her probation revoked, and was more attentive to her child before the Department decided to seek termination of the parent/child relationship than after. Sherri's current supervisor also testified favorably for her.

Given the child's special needs, the likelihood that she will need medical care for the rest of her life, the seriously detrimental effect that cigarette smoke had on the child, the unwillingness or inability of Sherri and her mother to stop smoking, the evidence that

4

Sherri missed appointments made to provide for the medical needs of the child, and the instability of her home life, there was sufficient evidence for a factfinder to form a firm belief or conviction that Sherri had knowingly allowed the child to remain in conditions or surroundings which endangered the physical well-being of the child and engaged in conduct or knowingly placed the child with persons who engaged in conduct endangering the physical well-being of the child. *See In re W.E.C.,* 110 S.W.3d 231, 238 (Tex. App.–Fort Worth 2003, no pet.) (noting that the child's respiratory problems requiring daily breathing treatments, the mother's failure to stop smoking and to prevent others from smoking around the child, and the presence of missed speech and cognitive therapy appointments for the child were factors supporting termination). Having so found, we need not address whether there existed evidence sufficiently supporting the third statutory ground upon which termination was founded.

*Best Interest of the Child*

Next, when determining the best interest of the child, we consider what have become known as the *Holley* factors. They include, among other things, 1) the desires of the child, 2) the emotional and physical needs of the child now and in the future, 3) the emotional and physical danger to the child now and in the future, 4) the parental abilities of the individuals seeking custody, 5) the programs available to assist those individuals to promote the best interest of the child, 6) the plans for the child by those individuals or by the agency seeking custody, 7) the stability of the home, 8) the acts or omissions of the parent indicating that the existing parent/child relationship is not a proper one, and 9) any excuse for the acts or omissions of the parent. *In re P.E.W.,* 105 S.W.3d 771, 779-80 (Tex. App.–Amarillo 2003, no pet.). It is not necessary that

each factor favor termination, *id.* at 780, and the list is not exclusive. *In re C.J.F.,* 134 S.W.3d 343, 354 (Tex. App.–Amarillo 2003, pet. denied). Furthermore, the same evidence illustrating the presence of statutory grounds for termination may also be probative of the child's best interest. *In re C.H.,* 89 S.W.3d at 28.

In addition to the evidence listed above, there was evidence that 1) the child's foster mother diligently took the child to her medical and therapy appointments, 2) the child made significant progress in her therapy, 3) the foster family accepted the suggestions of the child's therapists, 4) the child's medical condition was improving although she remained on an intensive medical regimen, 5) since being placed in a foster home, the child was active, 6) the child was considered adoptable despite her health problems, and 7) the foster family was assessing the possibility of adopting her.[4] Considering all of the evidence, there was clear and convincing evidence to support the decision that termination was in the child's best interest. *See In re D.L.N.,* 958 S.W.2d 934, 941 (Tex. App.–Waco 1997, pet. denied), *overruled in part on other grounds by In re J.F.C.,* 96 S.W.3d 256 (Tex. 2002) (stating that it may be inferred that past conduct endangering the well-being of a child may recur in the future). Consequently, we overrule appellant's claims of legal and factual insufficiency.

*Statutory Deadline*

Next, under circumstances like those at bar, an action to terminate parental rights must be dismissed if the trial is not commenced on the first Monday after the first anniversary of the date the court rendered a temporary order appointing the Department

---

[4]The foster family has concerns about adopting because Sherri was able to pull up a picture of their house on her cell phone and asked the foster mother "if she felt it was dangerous to be a foster parent knowing that she could be so easily looked up."

temporary managing conservator. TEX. FAM. CODE ANN. §263.401(a) (Vernon 2008). This is not so if the trial court finds that extraordinary circumstances necessitate the child remaining in the temporary managing conservatorship of the Department and that continuing the appointment of the Department as temporary managing conservator is in the best interest of the child. *Id.* §263.401(b). Should that happen, then trial may be delayed for an additional 180 days. All conceded that the foregoing deadlines were not met here. However, Sherri did not raise the default until after the completion of the trial. Furthermore, the matter was raised via a motion for new trial.

According to statute, a party who fails to timely move to dismiss the suit waives the right to object. *Id.* §263.402(b). Additionally, a motion to dismiss is timely if made before trial on the merits commences. *Id.*; *see also In re J.B.W.,* 99 S.W.3d 218, 222 (Tex. App.–Fort Worth 2003, pet. denied). Having waited until the end of her trial to raise the court's failure to abide by the statutory timeline, Sherri's motion was untimely; therefore, she waived her complaint.

Nevertheless, she also contends that because her attorney failed to timely raise the default, she received ineffective counsel. One claiming that counsel was ineffective must show both that his performance was deficient and that the deficiency was prejudicial. *In re J.P.B.,* 180 S.W.3d 570, 574 (Tex. 2005). Furthermore, prejudice is shown when there exists a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. *In re D.B.,* 153 S.W.3d 575, 577 (Tex. App.–Amarillo 2004, no pet.). It is also true that claims of ineffective assistance must be firmly founded in the record. *In re K.K.,* 180 S.W.3d 681, 685 (Tex. App.–Waco 2005, no pet.). This is important since the failure to request a dismissal is not ineffective

7

assistance *per se* but may be the result of trial strategy. *See In re K.K.,* No. 10-04-00303-CV, 2006 Tex. App. LEXIS 1819, at *11-12 (Tex. App.–Waco March 28, 2006, no pet.). For instance, counsel may have believed that the chances of success at trial were high, as was the situation in *K.K. Id.*

Here, nothing of record illustrated why counsel did not move to dismiss the action before trial commenced. Instead, Sherri asserted that "appellate counsel was unable to provide further evidence to demonstrate whether counsel could have had a trial strategy for failing to request a dismissal because of the trial court's denial of a timely filed motion for new trial." Yet, she does not explain why the reasons, if any, underlying her trial counsel's action could not have been obtained and included, via affidavit, in her motion for new trial. Nor does she attempt to illustrate that the State would not have sought termination through a second action or that such an action would have met with defeat. The absence of evidence touching upon the latter were factors considered by the *K.K.* panel when rejecting the claim of ineffective counsel there raised. *See id.* at *12.

In sum, Sherri failed to carry her burden of proof. So, we overrule her claim of ineffective counsel. The order of termination is affirmed.


Brian Quinn
Chief Justice


8