

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-23-00255-CV

———————————————

IN THE INTEREST OF R.E. AND A.E., CHILDREN

---

On Appeal from the 360th District Court
Tarrant County, Texas
Trial Court No. 360-714065-22

---

Before Kerr, Birdwell, and Womack, JJ.
Memorandum Opinion by Justice Womack

## MEMORANDUM OPINION

### I. INTRODUCTION

After a bench trial, the trial court terminated Mother's parental rights to her daughters, Roberta and Alicia.[1] Mother appeals that decision, arguing that the evidence is legally and factually insufficient to support the finding that terminating her parental rights was in the children's best interest.[2] We affirm the trial court's judgment.

### II. BACKGROUND

In 2019, Roberta told Mother that her cousin, who was living in Mother's home, had sexually assaulted her.[3] Mother's response was to slap Roberta—she did not believe Roberta, and she allowed the cousin to have continued access to Roberta and Alicia. The cousin was eventually arrested, tried as a juvenile, and removed from the home. The Child Protective Services investigator opined that Mother may have believed Roberta but simply did not want her to say anything.

Mother was later convicted of human trafficking and incarcerated in June of 2021. The children lived with Father briefly after Mother's arrest, but because of his work schedule, Father placed them with a former babysitter, Zulma. Father had

---

[1]We use aliases for the parents and children throughout this opinion. *See* Tex. R. App. P. 9.8(b)(2).

[2]The trial court also terminated Father's parental rights. He does not appeal.

[3]At the time of trial, Roberta was nine and Alicia was six.

arranged to "pick them up on the weekend." While staying with Zulma, Roberta told her that Father had been raping her. She also told investigators that Father had sexually assaulted Alicia.[4] The next week, Father's sister-in-law became angry at Zulma and threatened to have her arrested if the girls were not given back to their family. This made Zulma uncomfortable, so she gave the girls to a maternal aunt.

The girls fared no better with their maternal aunt. While in the aunt's home, a maternal uncle had unsupervised access to the girls. Roberta told the aunt that the uncle was sexually abusing her, but the aunt did not believe Roberta and continued to allow the uncle access to her. After the uncle again sexually assaulted Roberta and caused her so much pain that she threw up in the shower following the rape, CPS removed the girls from the aunt's home.

Mother was released from prison at the end of 2022, but she was arrested again in January 2023 for failing to report to a probation officer. During the short time that Mother was free, permanency specialist Joan Hall spoke with her about the case. Though she seemed upset about the sexual abuse of the girls by Father, Mother minimized the other intra-family sexual abuse and failed to grasp the importance of the girls' dental and medical issues and poor nutrition at home. When told that

---

[4]Authorities have been unable to locate Father and believe that he fled after Roberta's outcry, possibly to Guatemala.

Roberta had accused Mother of physical abuse, Mother denied that it had ever happened.

Roberta disclosed the physical abuse to Hall during a conversation about possibly living with Mother. Roberta told her that she feared going back with Mother and did not want to live with her again. When asked why, Roberta answered that Mother would hit her. When questioned about her feelings should Mother promise never to hit her again, Roberta said she still would not want to live with her. In addition, Roberta told Hall that "she saw her mom and dad fight and hit each other and that would scare her."

Hall created a service plan for Mother that included individual counseling, domestic violence classes, drug and alcohol assessment, and parenting classes. Mother completed four sessions of individual counseling before she was arrested and re-incarcerated. She did not, however, begin domestic violence classes, schedule a drug and alcohol assessment, or complete parenting classes. Mother was also unable to provide proof of employment. She is undocumented, and as of the time of trial, she faced the possibility of deportation.

The children were placed in an adoption-motivated foster home. Hall testified that the sisters initially struggled due to their past trauma, but with therapy and healthy parenting from the foster mother, they have improved significantly. The Department's plan is adoption by the foster home placement.

In Hall's opinion, termination of Mother's parental rights is in the children's best interest because it is not fair to them to have to wait in limbo for Mother to "mitigate the concerns and be a healthy and safe parent." In addition, Roberta has been greatly affected by the amount of trauma she has experienced with Mother, to the extent that Roberta fears moving back in with her. Moreover, every person who has been accused of sexually abusing the children, other than Father, is related to Mother. Finally, Mother's incarceration deprives the children of any kind of stable life, particularly in light of the fact that her relatives have been accused of sexually abusing the children.

The trial court found by clear and convincing evidence that both Mother and Father had (1) knowingly placed or knowingly allowed the children to remain in conditions or surroundings which endangered their physical or emotional well-being; (2) engaged in conduct or knowingly placed the children with persons who engaged in conduct which endangered their physical or emotional well-being; (3) constructively abandoned the children; and (4) failed to comply with the court-ordered family service plan. *See* Tex. Fam. Code Ann. § 161.001(b)(1)(D), (E), (N), (O). The trial court also found that termination of the parents' rights was in the best interest of the children. *See* Tex. Fam. Code Ann. § 161.001(b)(2).

### III. DISCUSSION

Mother attacks both the legal and factual sufficiency of the evidence supporting the trial court's finding that termination was in Roberta and Alicia's best interest.

5

Mother does not challenge the trial court's predicate findings under subsections (D), (E), (N), and (O) of Section 161.001(b)(1) of the Family Code. These unchallenged findings are binding on this court, *see In re E.A.F.*, 424 S.W.3d 742, 750 (Tex. App.— Houston [14th Dist.] 2014, pet. denied), and can therefore support the best interest finding, *see In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002) (holding that same evidence may be probative of both predicate grounds and best interest).

## A.  Standard of Review Generally

For a trial court to terminate a parent–child relationship, the Department must prove two elements by clear and convincing evidence: (1) that the parent's actions satisfy one ground listed in Family Code Section 161.001(b)(1); and (2) that termination is in the children's best interest. Tex. Fam. Code Ann. § 161.001(b); *In re E.N.C.*, 384 S.W.3d 796, 803 (Tex. 2012); *In re J.L.*, 163 S.W.3d 79, 84 (Tex. 2005). Because "[a] parental rights termination proceeding encumbers a value 'far more precious than any property right,'" due process demands the heightened standard of clear and convincing. *In re E.R.*, 385 S.W.3d 552, 555 (Tex. 2012) (quoting *Santosky v. Kramer*, 455 U.S. 745, 758–59, 102 S. Ct. 1388, 1397 (1982)). Evidence is clear and convincing if it "will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Tex. Fam. Code Ann. § 101.007; *E.N.C.*, 384 S.W.3d at 802.

## B. Legal Sufficiency

In evaluating the evidence for legal sufficiency to support a best-interest finding, we determine whether the evidence is such that a factfinder could reasonably form a firm belief or conviction that the Department proved the termination is in the children's best interest. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). We review all the evidence in the light most favorable to the finding and judgment, and we resolve any disputed facts in favor of the finding if a reasonable factfinder could have done so. *Id.* We also must disregard all evidence that a reasonable factfinder could have disbelieved, in addition to considering undisputed evidence even if it is contrary to the finding. *Id.* That is, we consider evidence favorable to termination if a reasonable factfinder could, and we disregard contrary evidence unless a reasonable factfinder could not. *See id.* We cannot weigh witness-credibility issues that depend on the witness's appearance and demeanor because that is the factfinder's province. *Id.* And even when credibility issues appear in the appellate record, we defer to the factfinder's determinations as long as they are not unreasonable. *Id.*

## C. Factual Sufficiency

We must perform "an exacting review of the entire record" in determining whether the evidence is factually sufficient to support a best-interest finding. *In re A.B.*, 437 S.W.3d 498, 500 (Tex. 2014). In reviewing the evidence for factual sufficiency, we give due deference to the factfinder's findings and do not supplant the judgment with our own. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). We

determine whether a factfinder could reasonably form a firm conviction or belief that termination was in the children's best interest. Tex. Fam. Code Ann. § 161.001(b); *C.H.*, 89 S.W.3d at 28. "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction in the truth of its finding, then the evidence is factually insufficient." *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002).

## D. The *Holley* Factors

Although we generally presume that keeping children with a parent is in the children's best interest, *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006), the best-interest analysis is child-centered, focusing on the children's well-being, safety, and development. *In re A.C.*, 560 S.W.3d 624, 631 (Tex. 2018). Evidence probative of the children's best interest may be the same evidence that is probative of a Subsection (b)(1) ground. *In re E.C.R.*, 402 S.W.3d 239, 249 (Tex. 2013); *C.H.*, 89 S.W.3d at 28; *see* Tex. Fam. Code Ann. § 161.001(b)(1), (2). We also consider the evidence in light of nonexclusive factors that the factfinder may apply in determining the children's best interest:

- the children's desires;

- their emotional and physical needs now and in the future;

- the emotional and physical danger to the children now and in the future;

8

- the parental abilities of the individuals seeking custody;

- the programs available to assist these individuals to promote the children's best interest;

- the plans for the children by these individuals or by the agency seeking custody;

- the stability of the home or proposed placement;

- the parent's acts or omissions that may indicate that the existing parent-child relationship is not a proper one; and

- the parent's excuse, if any, for the acts or omissions.

*Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976); *see E.C.R.*, 402 S.W.3d at 249 (stating that in reviewing a best-interest finding, "we consider, among other evidence, the *Holley* factors"); *E.N.C.*, 384 S.W.3d at 807. These factors do not form an exhaustive list, and some factors may not apply to some cases. *C.H.*, 89 S.W.3d at 27. Furthermore, undisputed evidence of just one factor may suffice in a particular case to support a finding that termination is in the children's best interest. *Id.* On the other hand, the presence of paltry evidence relevant to each factor will not support such a finding. *Id.*; *In re J.B.*, No. 02-18-00034-CV, 2018 WL 3289612, at *4 (Tex. App.—Fort Worth July 5, 2018, no pet.) (mem. op.).

## E. Analysis

### 1. Children's desires

Roberta fears Mother because Mother has physically abused her. Even if Mother could promise not to hit her ever again, Roberta would still prefer not to live

9

with her. This supports the trial court's best-interest finding. *See In re D.R.P.*, No. 04-21-00112-CV, 2021 WL 4555818, at *8 (Tex. App.—San Antonio Oct. 6, 2021, pet. denied) (mem. op.) (holding children's fear of future physical abuse by parent relevant to best-interest finding).

Alicia was six at the time of trial. The lack of evidence regarding whether she desires to live with Mother is not equivalent to the existence of contrary evidence. *See In re K.K.N.*, No. 14-18-00079-CV, 2018 WL 3118633, at *6 (Tex. App.—Houston [14th Dist.] June 26, 2018, no pet.) (mem. op.) (noting that six-year-old child was too young to express desire). In such a case, the factfinder may consider that the child has bonded with the foster family, is well-cared for by that family, and has spent minimal time with a parent. *See id.* Alicia and Roberta are "doing really well" with their foster family, and the foster family is willing to adopt both children.

### 2. Children's emotional and physical needs and danger to the children now and in the future

Roberta has experienced abuse at Mother's hands before and fears being sent back to her. *See D.R.P.*, 2021 WL 4555818, at *5 (holding that children's worry of being physically abused by parent in future supported trial court's best-interest finding). Roberta had also witnessed domestic violence between her parents. *See In re S.R.*, 452 S.W.3d 351, 366 (Tex. App.—Houston [14th Dist.] 2014, pet. denied) (holding that prior domestic violence between parents in home supported trial court's best-interest finding). In addition, Mother's legal issues and inability to stay out of jail

10

are relevant to her failure to provide for her children's emotional needs. *See In re J.M.G.*, 608 S.W.3d 51, 57 (Tex. App.—San Antonio 2020, pet. denied) (noting that parent's absence from child's life during incarceration creates an "emotional vacuum").

### 3. Parental abilities of Mother

The trial court could rationally be concerned about Mother's parental abilities. Both children complained that they did not get enough to eat when they were with Mother. In addition, both girls needed extensive dental work. Roberta had to have several "mini root canals," and Alicia had multiple cavities. *See In re J.H.*, No. 07-17-00307-CV, 2017 WL 6459537, at *5 (Tex. App.—Amarillo Dec. 11, 2017, pet. denied) (mem. op.) (holding that failure to seek necessary medical attention for children was relevant "parental ability" evidence in best-interest analysis).

### 4. Plans for the children by the individuals seeking custody

The Department's plan is for Roberta and Alicia to be adopted by their current placement, and the foster mother is adoption-motivated. *See In re N.H.*, No. 02-22-00157-CV, 2022 WL 4374638, at *13 (Tex. App.—Fort Worth Sept. 22, 2022, no pet.) (mem. op.) (noting relevance of child's presence in adoption-motivated home to best-interest analysis).

Conversely, there is no evidence that Mother has conceived of any plans for her children. *See In re J.H.G.*, 313 S.W.3d 894, 900 (Tex. App.—Dallas 2010, no pet.)

(holding parent's lack of anything but vague plan for children's future relevant to best-interest analysis).

### 5. Stability of home versus proposed placement

Children need long-term safety and stability; providing for a child's physical and emotional needs is of paramount importance. *See* Tex. Fam. Code Ann. § 263.307(a) ("[T]he prompt and permanent placement of the child in a safe environment is presumed to be in the child's best interest."). There is no evidence that Mother can provide a stable home for her children. It was during her incarceration for human trafficking that some of the sexual abuse perpetrated on her children occurred. When she was allowed to leave prison, she could not stay out—she was rearrested because she failed to report to her probation officer. *See In re J.B.W.*, 99 S.W.3d 218, 229 (Tex. App.—Fort Worth 2003, pet. denied) (holding trial court may consider incarceration when determining the best interest of a child in a termination case). Further, though not dispositive, Mother's likely deportation is another fact that underscores the instability she brings to her children. *See In re G.A.*, No. 01-11-00565-CV, 2012 WL 1068630, at *5 (Tex. App.—Houston [1st Dist.] Mar. 29, 2012, pet. denied) (mem. op.) (opining that parent's pending deportation was relevant to best-interest analysis).

By contrast, the children's foster placement is stable and motivated to adopt both sisters. The children's emotional outlook has improved since coming into care due to the foster mother's attention to "therapy and healthy parenting." When

12

initially placed in the foster home, the two sisters "would get violent with each other," including an instance in which Roberta tried to choke Alicia. The foster mother increased her supervision of the girls following that occurrence. In addition, Roberta was so anxious that she would hide under the bed or in the closet because she thought someone was going to hurt her. That behavior has also improved. *See In re J.D.*, 436 S.W.3d 105, 118 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (holding fact that foster home is safe and provides for child's needs is relevant to best-interest analysis).

### 6. Parent's acts or omissions that may indicate that the existing parent–child relationship is not a proper one and parent's excuse, if any, for the acts or omissions

Mother has been incarcerated for human trafficking,[5] has refused to believe her daughter's outcries of sexual abuse, has engaged in physical abuse of Roberta—to an extent that she refuses to return to Mother's home—and has failed to provide her children adequate medical and dental care.

---

[5]There is no evidence that Mother "trafficked" her own daughters. However, given Mother's lack of a protective instinct regarding the sexual abuse of her own children, we conclude that Mother's conviction for the specific offense of human trafficking supports the trial court's finding that termination of Mother's parental rights is in the children's best interest. *See In re S.G.*, No. 01-18-00728-CV, 2019 WL 1448870, at *9 (Tex. App.—Houston [1st Dist.] Apr. 2, 2019, pet. denied) (mem. op.) (holding that parent's prior conviction for sexual assault against unrelated child was relevant to best-interest analysis).

Mother failed to comply with the terms of her court-ordered service plan while she was out of jail.[6]  Though she participated in some individual counseling, she did not avail herself of domestic violence classes, a drug and alcohol assessment, or parenting classes.  *See In re K.F.*, 402 S.W.3d 497, 507 (Tex. App.—Houston [1st Dist.] 2013, pet. denied) (holding that parent's failure to complete court-ordered services can be an omission by a parent that is relevant to a best-interest analysis); *see also* Tex. Fam. Code Ann. § 263.307(b)(10) (noting that parents' willingness to cooperate with agency's close supervision is factor in determining whether parents are willing and able to provide child with safe environment).

These acts and omissions by Mother indicate that the parent–child relationship between her and her children is not a proper one.  Further, other than denial, Mother offers no excuses for these acts and omissions.

## F.  Holding

We hold that the evidence is legally and factually sufficient to show that terminating Mother's parental rights was in the best interest of Roberta and Alicia, and we overrule Mother's sole issue.

---

[6]The trial court found that Mother had failed to comply with the court-ordered family service plan.  *See* Tex. Fam. Code Ann. § 161.001(b)(1)(O).  As stated above, this unchallenged predicate finding may also be probative in a best-interest analysis and can therefore support the best-interest finding.  *See In re E.S.S.*, No. 05-23-00031-CV, 2023 WL 4782682, at *13 (Tex. App.—Dallas July 27, 2023, pet. denied) (mem. op.) (holding unchallenged finding that parent failed to engage in service plan supported best-interest finding).

## IV. CONCLUSION

Having overruled Mother's best-interest issue, we affirm the trial court's judgment.

/s/ Dana Womack

Dana Womack
Justice

Delivered:  November 16, 2023